576 So.2d 271 (1991)
Raymond DOLINSKY, Appellant,
v.
STATE of Florida, Appellee.
No. 64743.
Supreme Court of Florida.
January 18, 1991.
Rehearing Denied April 1, 1991.
*272 Michael L. Sullivan, Okeechobee, for appellant.
Robert A. Butterworth, Atty. Gen., and G. Bart Billbrough and Richard E. Doran, Asst. Attys. Gen., Miami, for appellee.
PER CURIAM.
Raymond Dolinsky appeals his convictions of two counts of second-degree murder and one count of first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions but vacate the death sentence and remand for resentencing to life imprisonment with no possibility of parole for twenty-five years.
The state charged Dolinsky with three counts of first-degree murder in the deaths of Curtis S. Redman, Kenneth Colbaugh, and Gerald Hamilton after their bodies were discovered at Cudjoe Key in Monroe County, Florida. The victims had apparently travelled to Monroe County to purchase a large quantity of marijuana. The state's evidence against Dolinsky consisted primarily of the testimony of the medical examiner, the investigating officers, and Scott Duncan, Melissa Duncan, and James Clark, also participants in the drug transaction.
At trial, the medical examiner testified that Redman received two mortal gunshot wounds, to the head and chest, as did Colbaugh who also received a third gunshot wound to the external genitalia and a fourth gunshot wound to the left elbow. Hamilton received a single mortal gunshot wound to the chest.
According to Scott and Melissa Duncan, who testified under immunity, Scott Duncan received a phone call in early April 1983 from Hamilton in Tennessee. Hamilton wanted to purchase a large quantity of marijuana, and Duncan told Hamilton that he had a friend who might be able to supply it. Duncan then called Clark who told Duncan that he could furnish the marijuana but that the transaction must occur in the Keys. Duncan relayed this information to Hamilton who arrived at Duncan's residence in Fort Lauderdale some sixteen to twenty hours later. Clark arrived shortly thereafter with Ronald Bowes, and Bowes and Hamilton proceeded to count Hamilton's money (some fifteen thousand to sixteen thousand dollars).
Clark's testimony set out the next series of events. After paying the Duncans five hundred dollars for setting up the transaction, Clark and Bowes followed Hamilton to a local motel where Hamilton picked up his friends, Redman and Colbaugh. With Bowes leading the way, accompanied by Clark as a passenger, the parties drove south, eventually arriving at a remote area of Cudjoe Key. As Bowes exited the vehicle, Clark saw him remove a pistol from between the seats and conceal it under his shirt. While Clark, Colbaugh, and Redman waited, Bowes and Hamilton walked out of sight toward a van which had been parked at the time of their arrival. Clark then heard loud laughter, followed by a shot. Fifteen to twenty minutes later, Clark heard a voice yell, "Freeze, police," followed by a second command to "lay down on the ground." Clark testified that he and Redman prostrated themselves on the ground but that Colbaugh, armed with a pistol, crouched down between the vehicles.
It is at this point that Dolinsky's participation is first noted. Clark testified that he heard a voice (which he identified as Dolinsky's) cry out, "There is still one behind the car," and "Come out from behind there." In response, Colbaugh threw his pistol into the bushes and extended himself on the ground. A few moments later, Dolinsky appeared and asked Clark, "Are you with us or against us?" Clark replied, "I am with you" and stood up. He then saw Dolinsky holding a pistol on Redman while Bowes frisked Colbaugh who was still lying on the ground. Bowes then gave Clark a .44 Magnum which had been in the possession of Hamilton. At Bowes' direction, Clark accompanied Dolinsky toward the van with Redman. As the three were walking they heard a shot and Clark testified that he saw Bowes standing over Colbaugh yelling, "I blew my thumb off" and "Kill him, Ray." Clark testified that Dolinsky fired two shots at Redman who fell to *273 the ground. Bowes, in the meantime, fired an additional two to three shots. Bowes then ordered Clark to shoot Redman again. Clark told Bowes that Redman was already dead. Upon being threatened by Bowes, Clark shot Redman in the head with the .44 Magnum. Clark, Bowes, and Dolinsky then left the area with Dolinsky leading the way in the van.
In his defense, Dolinsky, his wife, and a friend all testified that he was home the night prior to and the morning of the murders.
The jury found Dolinsky guilty of second-degree felony murder in the deaths of Hamilton and Colbaugh and first-degree premeditated murder in the death of Redman and recommended that Dolinsky be sentenced to life in prison for the first-degree murder conviction. The trial court rejected the recommendation and sentenced Dolinsky to death.
As his first point on appeal, Dolinsky argues that he should receive a new trial because a state witness made an impermissible comment on Dolinsky's exercise of his right to remain silent. The state called a police detective who testified that he had read Dolinsky his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When asked if Dolinsky understood those rights, the detective responded: "Yes, sir, and he refused to answer any questions at that time." Defense counsel objected to that answer and moved for a mistrial. The trial court sustained the objection, but reserved ruling on the motion for mistrial in order to give the state the opportunity to tie in this testimony to later testimony.
As its next witness, the state called another detective who testified that immediately after being read his Miranda rights Dolinsky answered the detective's questions concerning Dolinsky's identity.[1] The testimony of the second detective showed that Dolinsky did not, in fact, exercise his right to remain silent. We see no error here, and the trial court properly denied the motion for mistrial. See State v. Rowell, 476 So.2d 149 (Fla. 1985).
Dolinsky also claims that, because any initial confusion regarding his identity existed only on the state's part, the court erred in allowing the state's witnesses to testify that some of them thought Bowes and Dolinsky were brothers and that Dolinsky's original arrest warrant was issued in the name of Raymond Bowes. According to Dolinsky, this continual association of Bowes with Dolinsky could have confused the jury as to Dolinsky's participation in these crimes. Defense counsel, however, never objected to the testimony on this basis, and, therefore, the issue has not been preserved for appeal. See Parker v. State, 456 So.2d 436 (Fla. 1984); Castor v. State, 365 So.2d 701 (Fla. 1978). Moreover, after reviewing this record, we do not find the "confusion" to be as apparent or as extensive as Dolinsky contends.
As his final point regarding his convictions, Dolinsky argues that the trial court erred in not instructing the jury on aggravated battery as a lesser included offense of first-degree premeditated murder. Although counsel requested instructions on several other lesser included offenses at the charge conference, he did not mention aggravated battery. The next morning counsel did request that an aggravated battery instruction be given, but, because the request came only minutes before the jury was to be instructed, the court denied the request as untimely. Counsel did not object to that denial either then or later.
Aggravated battery is not a necessarily lesser included offense of felony murder. Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). It likewise is not a lesser included offense of first-degree premeditated murder because it is possible to commit each of those offenses without committing the other, and each contains elements the other does not. Because aggravated *274 battery is not a lesser included offense of first-degree premeditated murder and because counsel did not object to the failure to give the requested instruction, we find no error on this point. See Squires v. State, 450 So.2d 208 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).
Our review of the record also discloses sufficient competent evidence to support Dolinsky's convictions, and we affirm those convictions.
Turning to the sentencing phase, the trial court found three aggravating circumstances (previous conviction of violent felony, committed during a robbery or for pecuniary gain, and committed in a cold, calculated, and premeditated manner) but also found that any mitigating factors were "almost non-existent or, at most, insufficient to outweigh the aggravating circumstances." The court, therefore, overrode the jury's unanimous recommendation of life imprisonment and sentenced Dolinsky to death. Dolinsky now argues that the court erred in not following the jury's recommendation.
To support this claim, Dolinsky argues that the court erred in its finding of all three aggravating circumstance. His arguments are not persuasive regarding prior conviction of violent felony and committed during a robbery. The contemporaneous convictions of two counts of second-degree murder occurred prior to sentencing and can be used to find previous conviction of violent felony here because, although only a single incident occurred, multiple victims were involved. Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Lucas v. State, 376 So.2d 1149 (Fla. 1979). Also, we agree with the trial court that the evidence showed beyond a reasonable doubt that Redman's murder occurred during a robbery.
We disagree with the trial court's finding Redman's murder to have been committed in a cold, calculated, and premeditated manner. To justify finding this aggravating factor, the premeditation must exceed that level of premeditation required for a conviction of first-degree premeditated murder. Hardwick v. State, 461 So.2d 79 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985); Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). Although the jury convicted Dolinsky of premeditated murder, we do not find that the facts of this case demonstrate the applicability of this aggravating factor beyond a reasonable doubt.
Nor do we find that the trial court's overriding the jury's recommendation meets the standard of Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), i.e., "to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Dolinsky's jury unanimously recommended that he be sentenced to life imprisonment. "[A] jury's advisory opinion is entitled to great weight, reflecting as it does the conscience of the community, and should not be overruled unless no reasonable basis exists for the opinion." Richardson v. State, 437 So.2d 1091, 1095 (Fla. 1983).
After reviewing this record, we find that the jury might well have had a reasonable basis for its recommendation. While Dolinsky participated willingly in these crimes, it is apparent that Bowes masterminded the operation and played the primary role. Besides the actors' relative participation, the jury also could have considered what happened to these coperpetrators. Clark, who also shot Redman, testified against Dolinsky and received only five years' probation. Bowes had not even been apprehended at the time of Dolinsky's trial and sentencing.[2] Additionally, the *275 jury heard Dolinsky's mother and wife testify as to his good qualities as a hardworking man who had, at least to some extent, overcome serious adversities. In all, we find that reasonable persons could differ as to the propriety of the death sentence here. Therefore, we hold that the trial court improperly overrode the jury's recommendation.
Dolinsky's convictions are affirmed. The death sentence is vacated, and the trial court is directed to sentence Dolinsky to life imprisonment with no possibility of parole for twenty-five years for his first-degree murder conviction.
It is so ordered.
SHAW, C.J., and OVERTON and McDONALD, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.
EHRLICH, Senior Justice, concurs in part and dissents in part with an opinion.
GRIMES and KOGAN, JJ., did not participate in this case.
BARKETT, Justice, concurring in part, dissenting in part.
I agree with the majority regarding the sentence but would also reverse and remand for a new trial. I believe that Detective Veliky's comment on Dolinsky's constitutional right to remain silent at arrest was reversible error. There is no question that the detective's comment was a comment on Dolinsky's silence. See State v. Kinchen, 490 So.2d 21 (Fla. 1985). Moreover, there is no question that such a comment is a clear and inexcusable violation of a defendant's rights under the constitutions of the United States and of the State of Florida. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We have held, however, that this violation of a defendant's constitutional rights cannot be grounds for an automatic reversal of a conviction. State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986). In order to determine whether or not such violations mandate reversal, appellate courts must determine whether the state has met its burden of showing that the error did not affect the verdict and was therefore harmless.
In DiGuilio, we explained:
The harmless error test, as set forth in Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
DiGuilio, 491 So.2d at 1135. We cautioned appellate courts that the harmless error test
is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. at 1139. Applying this test to the facts of this case, I must conclude that the error was harmful. Except for the suspect testimony of James Clark, who was an admitted participant and in one instance a triggerman, there is absolutely no testimonial or physical evidence linking Dolinsky to the murders. The only other evidence the jury *276 may have relied upon in rendering their guilty verdicts was Dolinsky's friendship with Bowes and Dolinsky's ownership of a maroon van that was never identified as the van at the murder site. Dolinsky denied any involvement in the murders. He testified that he was home with his wife when the murders were committed. His wife and a friend corroborated this testimony. The jury obviously disregarded Dolinsky's alibi. Ordinarily, such disregard would constitute a legitimate rejection of Dolinsky's (and the other defense witnesses') credibility. In this case, however, we have Veliky's impermissible comment on Dolinsky's exercise of his right to remain silent. In State v. Burwick, 442 So.2d 944, 947 (Fla. 1983) (quoting in part from United States v. Hale, 422 U.S. 171, 177, 95 S.Ct. 2133, 2137, 45 L.Ed.2d 99 (1975)), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984), this Court explained how such comments can infect the minds of jurors:
We fully recognize that it is a fundamental principle of our constitutional law that a defendant cannot be penalized for exercising his fifth amendment privilege to refuse to communicate to the authorities information which would implicate him in the commission of a criminal offense. Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)]; Clark v. State, 363 So.2d 331 (Fla. 1978) [, overruled in part, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986)]; Bennett v. State, 316 So.2d 41 (Fla. 1975) [, overruled in part, DiGuilio, 491 So.2d at 1129]. The reason for the rule holding inadmissible at trial evidence of the postarrest silence and request for counsel of a defendant who has been advised of his Miranda rights is that the evidence creates an inference that the defendant is guilty of committing the criminal act.
... .
[F]ailure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct.
See also Hale, 422 U.S. at 180, 95 S.Ct. at 2138 (evidence of silence at arrest has a significant potential for prejudice in that the jury is likely to assign much more weight to the defendant's previous silence than is warranted).
The impermissible testimony of Veliky in this case certainly could have shaken Dolinsky's alibi in the eyes of the jury. After careful examination of the entire record in this case, I simply cannot say beyond a reasonable doubt that the improper comment did not affect the jury's verdict. Accordingly, I would reverse Dolinsky's convictions and remand for a new trial.
EHRLICH, Senior Justice, concurring in part and dissenting in part.
I concur in the judgment of conviction, but I dissent as to the sentence.
The trial court found three aggravating circumstances: 1) prior conviction of a violent felony, 2) committed during a robbery or for pecuniary gain, and 3) committed in a cold, calculated, and premeditated manner. The majority rejects the trial court's finding that Redman's murder was committed in a cold, calculated, and premeditated manner. I am of the opinion that the trial court correctly found this factor.
The evidence establishes without question that these three homicides grew out of a drug rip-off, and that defendant arrived at the murder site first. After the five others arrived, Bowes and Hamilton walked toward defendant's van and shortly thereafter Hamilton was killed. Within a matter of minutes, Bowes shot and killed Colbaugh and defendant fired two shots at Redman, felling him. If not already dead, Redman was finished off by Clark at the direction of Bowes. Before beginning the journey to the Keys, Bowes and Hamilton had counted Hamilton's money in the approximate amount of $15,000 to $16,000.
There is no evidence of the manner in which Hamilton was killed or whether Bowes or defendant was the triggerman. It was some fifteen to twenty minutes after Hamilton was shot that Bowes reappeared *277 with defendant and all others were ordered to lay down on the ground and were disarmed. While Colbaugh was still on the ground, Bowes killed him and then defendant shot Redman. There is no evidence that defendant had any marijuana in the van or that this drug deal fell through because of some basic disagreement. While it may be argued that the killing of Hamilton was not cold, calculated, and premeditated, there can be no question but that the fate of Redman and Colbaugh was sealed as of the killing of Hamilton, and most likely the fate of all the victims was sealed from the moment the drug deal was set up and it was determined that Hamilton had substantial monies with him.
While Bowes stood over a prostrate Colbaugh, defendant and Clark were taking Redman toward the van, obviously to shoot him. After Bowes injured his thumb when he shot Colbaugh, he yelled to defendant to kill Redman and defendant obliged by shooting him. This sordid sequence of events bespeaks of no conclusion other than that the three victims would be lured to the isolated spot in the Keys on the pretext of a drug deal in order to rob them of the rather substantial sums of money which they had, and then to leave no witnesses. The trial court's finding of the aggravating factor of cold, calculated, and premeditated is abundantly supported by the evidence. Defendant did not shoot Redman in seeming haste, or on the spur of the moment. As the events unfolded, everything fit into a plan, and that plan was to rob and to kill so as to leave no witnesses.
There was no evidence to support any of the statutory mitigating circumstances. With respect to nonstatutory mitigating circumstances, defendant's mother and wife testified. The best that can be gained from their testimony is that defendant supported his children; was a good, steady and hard worker; a good son; and a good, loving husband.
The trial judge weighed the three aggravating circumstances found against the mitigating factors disclosed by the evidence and properly concluded that the mitigating factors "are almost nonexistent, or, at most, insufficient to outweigh the aggravating factors."
The majority has concluded that the trial court erred in overriding the jury's recommendation of life on the basis of Tedder v. State, 322 So.2d 908 (Fla. 1975). I do not believe that there is any reasonable basis in the record to support such a recommendation. The defendant was certainly not a minor participant in this sordid transaction. It was his van to which all the other participants came to consummate the drug deal. He was found guilty of first-degree, premeditated murder of Redman and second-degree murder of Colbaugh and Hamilton. In short, he premeditatedly killed one person and at the very least participated in the death of two others. Clearly, the two convictions for second-degree murder were jury pardons since the uncontroverted facts would have supported a finding of first-degree felony murder.
Here again, in setting aside the trial judge's sentence of death, the majority indulges in speculation as to what may have prompted the jury to recommend life. Because there is no way of ascertaining the basis of a jury's recommendation, one can say with as much creditability and certainty that the jury may not have viewed the killing of drug dealers as any great societal loss and certainly not as an act deserving of the death penalty.
I submit that there is no reasonable basis to overturn the sentence of the statutory sentencer. The testimony of the defendant's family members that he was a good father, son and husband is garden-variety penalty-phase testimony which, in light of the aggravating factors present in this case, does not provide a reasoned basis for the jury's recommendation.
The majority surmises that the jury also could have considered the treatment accorded the defendant's coconspirators. The trial judge likewise recognized the possibility that the jury "considered as mitigation the fact that one defendant [Clark] was charged as an accessory only in return for his testimony" but obviously concluded that this factor was insufficient to support *278 the jury's recommendation. Clark was a comparatively minor participant. True, he helped set up the drug deal but he clearly was not calling the shots with respect to the murders. There is absolutely nothing in the record that would remotely indicate that he knew that this was to be anything but a drug transaction. There is nothing to implicate him in the drug rip-off and homicides. He was ordered by Bowes to shoot Redman again after Redman had already been shot twice by defendant, and according to Clark was dead when he shot him. Any disparate treatment in sentencing between Clark and defendant, under the undisputed facts of this case, cannot support the recommendation.
Giving the jury's recommendation "great weight," the trial judge concluded that the three aggravating factors found clearly outweighed the "almost nonexistent" mitigating circumstances. Since there is no reasonable basis for the jury's recommendation, the override should be upheld.
Increasingly, in my view, where there is a life recommendation by the jury, the weighing process mandated by section 921.141(3), Florida Statutes (1989), is held for naught by this Court's decisions. I am gravely concerned that this Court's application of the so-called Tedder standard is rapidly making the jury the actual sentencer where there is a life recommendation. To do so, in the face of the clear language of section 921.141(3), may well render Florida's death penalty unconstitutional. Such is likely because the jury does not make any express findings of fact to support its recommendation, which can be subject to judicial review, and as is the case time and time again, this Court indulges in speculation as to what may have been the basis for the jury's recommendation and on the basis of such conjecture makes a determination as to whether the override stands or falls. It is this arbitrariness that was condemned by the high Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
NOTES
[1] Dolinsky and Bowes referred to each other and had the habit of introducing each other to people as brothers. There was some initial confusion as to whether Dolinsky's name was Raymond Dolinsky or Raymond Bowes.
[2] Bowes was later apprehended, tried, and convicted of, among other things, first-degree murder. His trial court sentenced him to life imprisonment. On appeal the district court reversed and remanded for retrial because of error during his trial. Bowes v. State, 500 So.2d 290 (Fla. 3d DCA 1986).