609 So.2d 600 (1992)
Daniel BURNS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 72638.
Supreme Court of Florida.
December 24, 1992.
*602 James Marion Moorman, Public Defender and Paul C. Helm, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Daniel Burns, Jr., a prisoner under sentence of death, appeals his convictions of first-degree murder and trafficking in 200 grams or more of cocaine and his sentence of death. We have jurisdiction[1] and affirm the convictions, but vacate the sentence and remand for resentencing by the judge before a newly empaneled jury.
According to testimony at trial, the victim, Jeff Young, a Florida Highway Patrol Trooper, stopped an automobile with Michigan tags that was being driven north on Interstate 75 by Burns. According to Burns' passenger, Samuel Williams, he and Burns were returning to Detroit from Fort Myers. Prior to making the trip, Williams overheard Burns say that he was going to make a couple of trips to Florida to purchase about $10,000 worth of cocaine. According to Williams, Trooper Young approached the car after pulling them over and asked Burns and Williams for identification. He then returned to the patrol car to use the radio. The highway patrol dispatcher testified that Trooper Young requested a registration check on the Michigan tag and a wanted persons' check. Williams further testified that Young returned to the vehicle and asked to search it. After searching the passenger compartment, Young asked to search the trunk, which Burns voluntarily opened. According to Williams, Burns and Trooper Young began to struggle after the officer found what "look[ed] like cocaine" in a bank bag that was in the trunk.
Several passersby who witnessed the struggle testified at the trial. According to those witnesses, the struggle continued until the two ended up in a water-filled ditch. At this point, Burns gained possession of Trooper Young's revolver. Passersby who had returned to assist the officer testified that Young, who was attempting to rise out of the water, warned them to stay away and said, "He's got my gun." Young told Burns, "You can go," and, "You don't have to do this." According to testimony of these witnesses, Burns stood over Trooper Young, who had his hands *603 raised, held the gun in both hands, and fired one shot. According to the medical examiner, the shot struck the officer's wedding ring and grazed his finger before entering his head through his upper lip, killing him. After telling Williams to leave with the vehicle, Burns fled the scene on foot. By the time a fellow trooper arrived to assist Young, he was lying in the water-filled ditch, dead. His shirt had been ripped exposing his bulletproof vest.
Burns was apprehended later the night of the murder. A subsequent search of the vehicle, found abandoned the next day, revealed over 300 grams of cocaine in bags found under the spare tire in the trunk. Burns' fingerprints were recovered from one of these bags. Cocaine and documents with Burns' name on them were also found in the bank bag, which had been left on the ground at the scene of the murder.
The jury found Burns guilty of first-degree murder and trafficking in cocaine, as charged, and recommended that he be sentenced to death in connection with the murder. Finding two aggravating factors,[2] one statutory mitigating factor,[3] and various nonstatutory mitigating circumstances,[4] which were considered "not significant," the trial court imposed the death penalty and sentenced Burns to thirty years' imprisonment in connection with the trafficking conviction.
Burns raises nine claims in this appeal.[5] These claims are: I) the trial court erred in allowing the state to present evidence of the victim's background and character and in failing to prevent emotional displays by the victim's wife; II) Burns was deprived of a fair trial due to alleged instances of prosecutorial misconduct; III) the trial court erred by admitting the medical examiner's testimony concerning ballistics; IV) it was error to admit color slides of the victim; V) Burns' due process rights were violated by confusing and misleading jury instructions on the state's burden of proof; VI) it was fundamental error for the trial court to give misleading jury instructions on excusable homicide; VII) the trial court erred by exempting both psychologists from the sequestration rule and by refusing to allow surrebuttal by the defense psychologist; VIII) the trial court erred 1) by instructing the jury upon the aggravating factors of a) heinous, atrocious, or cruel and b) cold, calculated, and premeditated and 2) by finding the murder was heinous, atrocious, or cruel; and IX) the trial court erred by failing to consider evidence of mitigating factors and by imposing a death sentence which is disproportionate.
We begin by rejecting claims II, III, IV, V, and VI, each of which merits only brief discussion.
A thorough review of the record leads us to reject claim II that the cumulative effect of various alleged instances of prosecutorial misconduct deprived Burns of a fair trial. Of the comments complained of, none are so prejudicial either individually or in combination as to amount to reversible error entitling Burns to a new trial.
Burns' third claim challenging the admission of expert testimony of the medical examiners concerning what Burns refers to as "ballistics" is also without merit. A trial court has broad discretion in determining the range of subjects on which an expert witness may be allowed to testify, and, absent a clear showing of error, its decision will not be reversed. See Ramirez v. State, 542 So.2d 352 (Fla. 1989); Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 *604 L.Ed.2d 191 (1981). In light of the testimony of each medical examiner explaining his training and experience in determining the distance from which a gun must be fired to leave "stippling" or "soot"[6] on a victim, Burns has failed to show that the trial court abused its discretion in admitting the testimony concerning these distances.
We also conclude that the trial court did not abuse its discretion in allowing the jury to be shown color slides of the victim taken at the time of the autopsy, as alleged in claim IV. The test of admissibility of photographic evidence is relevance. Nixon v. State, 572 So.2d 1336, 1342 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991); Haliburton v. State, 561 So.2d 248, 250 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Gore v. State, 475 So.2d 1205, 1208 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986). The slides were shown to the jury during the medical examiner's testimony to assist him in explaining the nature and location of the victim's injuries and cause of death. See Nixon, 572 So.2d at 1342 (photographs admissible to assist medical examiner in illustrating nature of wounds and cause of death); see also Haliburton, 561 So.2d at 251; Bush v. State, 461 So.2d 936, 939 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986). Because the slides at issue were not so shocking in nature as to outweigh their relevancy, there was no abuse of discretion in allowing their use.
Claim V that Burns' due process rights were violated by the giving of confusing and misleading instructions to the jury involves a misstatement made by the trial judge while instructing the jury in response to a question asked during guilt phase deliberations concerning premeditated and felony murder. In responding to the jury's question, the judge misspoke, instructing the jurors to find Burns guilty of premeditated and/or felony murder if the offense was "proved to your satisfaction by the greater weight of the evidence." The judge immediately corrected the misstatement by saying "excuse me, beyond and to the exclusion of a reasonable doubt." Before allowing the jury to resume deliberations, the judge again explained that he had used the phrase greater weight of the evidence "inadvertently" and emphasized "that whatever you find, whatever crime you find, if any, must be proved beyond a reasonable doubt. That instruction is also in your package of instructions." It is clear from the record that the jury was not confused or misled by this misstatement.
In claim VI Burns maintains that the short-form standard jury instruction on excusable homicide that was read to the jury is inherently misleading because it incorrectly suggests a homicide committed with a deadly weapon can never be excusable, thereby negating his defense of an accidental shooting. However, defense counsel did not object to this instruction, and the giving of the instruction, as worded, is not fundamental error. Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991); State v. Schuck, 573 So.2d 335 (Fla. 1991); State v. Smith, 573 So.2d 306 (Fla. 1990). Moreover, Burns could not have been prejudiced because there was no evidence to support the theory of excusable homicide.
Next we turn to claim I, which is raised in connection with both the guilt and penalty phases of the trial. We reject Burns' contention in claim I that he was deprived of a fair trial because of emotional displays by the victim's wife. Our review of the record reveals no prejudicial exhibition of emotion entitling Burns to a new trial. On three occasions, defense counsel brought to the court's attention the fact that the victim's wife who was seated in the audience had been crying. On the first occasion, defense counsel asked the court to instruct the members of the audience to leave the courtroom if they were *605 overcome by emotion. The court denied the request, stating that "I've been kind of watching and there certainly isn't anything that's overt  we haven't had a reason for me to instruct on overt behavior. But if there is some, I'll be glad to do it." On the second occasion, defense counsel merely renewed the first request. The court again denied the request, finding that at that point nothing had happened to warrant a cautionary instruction to the audience. On the third occasion, the record reflects that Mrs. Young was leaving the courtroom at the time defense counsel raised the issue. Defense counsel sought no relief in connection with this incident, she "just want[ed] it on the record."
We also disagree with Burns' contention in claim I that he was deprived of a fair trial and a fair sentencing determination because evidence concerning the characteristics of the victim that was not relevant to any material fact in issue was presented to the jury. During the guilt phase of the trial, Trooper Young's supervisor, Sergeant Cheshire, testified during direct examination by the state concerning Young's background and character as a law enforcement officer to "rebut" statements made by defense counsel during her opening statement. Defense counsel had taken the position that the evidence would establish that Young was killed as a result of an accidental shooting during a struggle that allegedly ensued when Young pulled his gun on Burns and made threatening remarks. In responding to defense objections to the challenged testimony, the trial court held Young's professional training, education, and conduct as an officer relevant in light of the defense urged during opening statement.
Burns maintains that this testimony amounted to improper victim impact evidence under Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). Recently, however, in Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court receded from its holdings in Booth and Gathers that "evidence and argument relating to the victim and the impact of the victim's death on the victim's family are inadmissible at a capital sentencing hearing." Id. ___ U.S. at ___ n. 2, 111 S.Ct. at 2611 n. 2. "The only part of Booth not overruled by Payne is `that the admission of a victim's family member's characterizations and opinions about the crime, the defendant, and the appropriate sentences violates the Eighth Amendment.'" Hodges v. State, 595 So.2d 929, 933 (Fla. 1992) (quoting Payne, ___ U.S. at ___ n. 2, 111 S.Ct. at 2611 n. 2). We find no merit to Burns' Booth claim because the challenged evidence is of the type covered in Payne. See Hodges.
The challenged testimony, however, was not relevant to any material fact in issue. See Bryan v. State, 533 So.2d 744, 746-47 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989); §§ 90.401, .402, Fla. Stat. (1989).[7] At the time the challenged testimony was admitted, nothing had been elicited by the defense to support its contention that the officer acted improperly. Comments made by defense counsel during opening statement do not "open the door" for rebuttal testimony by state witnesses on matters that have not been placed in issue by the evidence. State v. Baird, 572 So.2d 904, 907 (Fla. 1990); see Whitted v. State, 362 So.2d 668, 673 (Fla. 1978) ("It is uncontroverted that the opening remarks of counsel do not constitute evidence."); Jacob v. State, 546 So.2d 113, 115 (Fla. 3d DCA 1989) (defense counsel's comments, made during opening statement in prosecution for assault and battery on law enforcement officer, as to officer's aggressive conduct toward the defendant did not constitute *606 evidence that could be rebutted by character evidence offered by the state).
Although it was error to admit this irrelevant testimony, its effect is judged under the harmless error test. On this record there is no reasonable doubt that the jury would have found Burns guilty of the offenses charged in its absence. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). As noted above, a number of disinterested eyewitnesses testified that Burns stood over the officer, placed both hands on the gun, and shot him. More than ample evidence linked Burns to the cocaine found in the car. It is clear that the erroneous admission of this evidence was harmless error as to the finding of guilt.
We disagree with Burns' claim that the court erred in allowing the state's expert to remain in the courtroom during the defense psychologist's testimony. At the beginning of trial, the defense invoked the witness sequestration rule. Subsequently, after hearing the parties on the matter, the court ruled that the state's expert would be allowed to remain in the courtroom during any testimony of Burns or of the defense psychologist. Later, the court ruled that both experts would be exempt from the rule and could be present during the entire penalty phase. It is clear from the record that the state's expert was allowed to hear the testimony of the defense's expert to enable the state to rebut the defense's evidence of mental mitigation. The trial court determined that such was necessary in light of the fact that Burns would not be required to submit to an examination by the state's expert because there appeared to be no authority for such an examination.[8]
Generally, once the witness sequestration rule has been invoked, a trial court should not permit a witness to remain in the courtroom during proceedings when he or she is not on the witness stand. Randolph v. State, 463 So.2d 186, 191-92 (Fla. 1984), cert. denied, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985). However, this is not an absolute rule and the trial court has discretion to determine whether a particular witness should be excluded from the rule. Id.; Spencer v. State, 133 So.2d 729, 731 (Fla. 1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962). In this case the trial court did not abuse its discretion in exempting both the state and defense experts from the sequestration rule. Under the circumstances, this was the only avenue available for the state to offer meaningful expert testimony to rebut the defense's evidence of mental mitigation. See Nibert v. State, 574 So.2d 1059, 1062 (Fla. 1990).
Burns raises several claims regarding aggravators and mitigators, but one issue is dispositive. We agree with Burns that the record does not support the trial court's finding the murder to have been especially heinous, atrocious, or cruel. The struggle during which Trooper Young was shot a single time was short, and the medical examiner testified that the wound would have caused rapid unconsciousness followed within a few minutes by death. Additional facts that set it "apart from the norm of capital felonies," and that could have made it heinous, atrocious, or cruel, did not accompany this murder. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); cf. Rivera v. State, 545 So.2d 864 (Fla. 1989) (shooting of police officer during struggle for weapon not heinous, atrocious, or cruel); Brown v. State, 526 So.2d 903 (Fla.) (same), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988); Fleming v. State, 374 So.2d 954 (Fla. 1979) (same).
Eliminating the heinous, atrocious, or cruel aggravator leaves one valid aggravator to be weighed against one statutory *607 mitigator and, in the trial court's words, "not significant" nonstatutory mitigators. "If there is no likelihood of a different sentence," the trial court's reliance on an invalid aggravator "must be deemed harmless." Rogers v. State, 511 So.2d 526, 535 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Here, however, we cannot determine what weight the trial judge gave to the various aggravators and mitigators he found or what part the invalid aggravator played in Burns' sentence.[9] Therefore, although we affirm Burns' convictions, we vacate his death sentence and remand for a new sentencing proceeding.
We next must decide whether this new sentencing hearing should be before a jury or whether a reassessment by the trial judge alone is appropriate. Generally, if we discern no error in the jury proceeding and reverse solely because of error in the sentencing order, a new sentencing proceeding before the judge alone is the prescribed remedy. Reverting to our earlier finding that it was error to admit the background evidence of the deceased, we cannot with the same certainty determine it to be harmless in the penalty phase. The testimony was extensive and it was frequently referred to by the prosecutor. The prosecutor described the defendant as an evil supplier of drugs and contrasted him with the deceased. These emotional issues may have improperly influenced the jury in their recommendation. In the interest of justice we determine that fairness dictates the new sentencing hearing proceeding to be before a newly empaneled jury as well as the judge.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] 1) The murder was committed to avoid arrest or hinder law enforcement, and 2) the murder was heinous, atrocious, or cruel.
[3] No significant criminal history.
[4] The trial court found the following nonstatutory mitigators: 1) Burns was raised in a poor, rural environment; 2) he has worked hard to support his family; 3) he has supported his children; 4) he received an honorable discharge from the armed forces; and 5) he has expressed that the event was an accident and that he was sorry it happened.
[5] Claims III, IV, V, and VI are urged in connection with the guilt phase of the trial. Claims VII, VIII, and IX are urged solely in connection with the penalty phase of the trial. Claims I and II are urged in connection with both phases of the trial.
[6] According to one medical examiner's testimony, speckled spots which appear on the skin when it is hit with burning or unburnt gunpowder is referred to as "stippling." The residue left by completely burnt gunpowder is referred to as "soot."
[7] Even under Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), evidence of the characteristics of the victim was admissible if relevant to the circumstances of the crime, Bertolotti v. State, 565 So.2d 1343, 1345 (Fla. 1990), or to rebut an argument offered by the defendant. Booth, 482 U.S. at 507 n. 10, 107 S.Ct. at 2535 n. 10; Hitchcock v. State, 578 So.2d 685 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 311, 116 L.Ed.2d 254 (1991).
[8] We do not pass on whether the court erred in denying the state's request to have its expert examine Burns. However, because there is no rule of criminal procedure that specifically authorizes a state's expert to examine a defendant facing the death penalty when the defendant intends to establish either statutory or nonstatutory mental mitigating factors during the penalty phase of the trial, the matter has been brought to the attention of the Florida Criminal Rules Committee for consideration.
[9] During our consideration of Burns' appeal, the United States Supreme Court held our former standard jury instruction on the heinous, atrocious, or cruel aggravator insufficient. Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Although Burns' jury received the instruction struck down in Espinosa, and he objected to the applicability of the aggravator, he did not object to the vagueness of the instruction and thus deprived the trial judge of an opportunity to rule upon or correct the charge. Burns, therefore, did not preserve the Espinosa issue, and it is not a reason for remand.