682 So.2d 539 (1996)
William Lee STRAUSSER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 84371.
Supreme Court of Florida.
October 17, 1996.
Richard L. Rosenbaum of the Law Offices of Richard L. Rosenbaum, Fort Lauderdale, for Appellant.
Robert A. Butterworth, Attorney General and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee.
SHAW, Justice.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on William Lee Strausser, Jr. We *540 have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but vacate the death sentence and remand for imposition of a life sentence with no possibility of parole for twenty-five years.
Thirty-one-year-old William Strausser and fourteen-year-old Elec Trubilla were close friends. Strausser and Elec's father, Allan, were lovers. When the sexual relationship between Strausser and Allan ended, Allan told Strausser to stay away from Elec. Elec continued to telephone Strausser, however, and complain that his father was emotionally abusing him. When Strausser and his wife let Elec take refuge in their home, Allan filed a complaint against Strausser for interfering with child custody and this led to Strausser's arrest. Strausser and his wife subsequently moved from Fort Lauderdale to Cape Coral, Florida, to get away from the situation, but Elec continued to telephone Strausser and complain about his father.
Elec called on the days immediately preceding the murder and pleaded for help, saying that he wanted to kill his father. On Monday, August 17, 1992, Strausser drove from Cape Coral to Fort Lauderdale with a change of clothes and a knife. He bought a pair of rubber gloves at a drug store and went to Elec's house. Elec was home but Allan was at work. Strausser and Elec waited until they heard Allan's key in the door at around 10:30 p.m., and Strausser hid in Elec's room. After Allan had fallen asleep, Elec woke him at about 1:00 a.m. and hit him over the head with a frying pan. Strausser then stabbed him repeatedly. Several witnesses saw Strausser fleeing from the scene and Elec later gave a statement describing the details of the crime. Strausser was arrested, gave a self-inculpatory statement, and was charged with first-degree murder.
At trial, the defense attempted to show that Strausser was insane at the time of the murder. Psychologist Dr. Appel attested to this, and Strausser's mother testified that he had been diagnosed with "minimal brain damage" at birth. Strausser himself testified, stating that he only remembered going to Elec's house and then waking up lying on top of Allan on the bloody bathroom floor. He did not remember anything about the crime itself. On rebuttal, the State presented two court-appointed experts who testified that Strausser was sane at the time of the murder. Strausser was convicted of first-degree murder.
During the penalty phase, the State played Elec's taped statement. The defense then put on several witnesses, including Strausser, a friend of Strausser's, Strausser's wife, and his mother. The jury deliberated eighty minutes before recommending a life sentence. The judge overrode the jury's recommendation and imposed a sentence of death after finding two aggravating circumstances,[1] one statutory mitigating circumstance,[2] and eight nonstatutory mitigating circumstances.[3] Strausser raises six issues and five subissues on appeal.[4]
Strausser first claims that the court erred in allowing a mental health expert, Dr. Walczak, to be present in the courtroom *541 while Strausser testified on direct examination and to comment on Strausser's credibility. We disagree. The Court addressed this issue in Burns v. State, 609 So.2d 600 (Fla. 1992), wherein we ruled that the trial court did not err in allowing the State's mental health expert to remain in the courtroom during the defense expert's testimony:
Generally, once the witness sequestration rule has been invoked, a trial court should not permit a witness to remain in the courtroom during proceedings when he or she is not on the witness stand. However, this is not an absolute rule and the trial court has discretion to determine whether a particular witness should be excluded from the rule.
Id. at 606 (citation omitted)
A main issue in the present case was Strausser's sanity at the time of the crime and the trial court may reasonably have concluded that Walczak's presence during Strausser's testimony was "essential to the presentation of the ... cause." § 90.616(2)(c), Fla.Stat. (1993). Walczak was a court-appointed expert and was present only during the direct examination of Strausser. We find no abuse of discretion.[5] As to Strausser's claim that Walczak improperly commented on Strausser's credibility, the issue was not preserved.
Strausser next claims that the court erred in allowing the State to comment on the charge of interfering with child custody, which Allan filed against Strausser when Elec ran away from home and took refuge with Strausser. We disagree. The filing of this charge was inextricably intertwined with the murder in that it prompted Strausser to move from Fort Lauderdale to Cape Coral; it may well have contributed to Strausser's anger towards Allan; and it underscored the fact that Allan would not willingly let Elec leave. We find no error.
Strausser claims as his third point that the court erred in permitting Strausser's friend, Lloyd Pryor, to comment on Strausser's state of mind immediately following the crime. Pryor testified that he had known Strausser for twelve years and that Strausser had raised him. On cross-examination, defense counsel quizzed Pryor at length about Strausser's state of mind in the period leading up to the murder. On redirect, the following took place:
Q. The phone conversations that you had with Mr. Strausser on the 18th when he told you what happened,
A. Yes.
Q. you told us how he sounded, how he appeared. But when he spoke to you, did it appear to you that he knew what he had done?
A. What do you mean did he know what he had done? He told me what he did.
Q. That he killed Alan Trubilla, right?
A. Yes.
Q. And from your conversation, could you tell that he knew what he had done was wrong?
Defense counsel objected, the objection was overruled, and Pryor answered as follows:
If you kill someone would you think it was wrong? That's the way I wouldI wouldn't even think like that. Because I think he knew what he did was wrong, but anybody would think that.
I am not sure whether I went into detail with him about it.
This Court has noted that "[i]t is a well established principle of law in this state that an otherwise qualified witness who is not a medical expert can testify about a person's mental condition, provided the testimony is based on personal knowledge or observation." Rivers v. State, 458 So.2d 762, 765 (Fla.1984). The conversation here took place shortly after the murder and Pryor's testimony was based entirely on his personal observations. We find no error.
As his last point, Strausser claims that the court erred in overriding the jury's recommended sentence of life imprisonment. *542 We agree. This Court set out the standard for a jury override in Tedder v. State, 322 So.2d 908 (Fla.1975):
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Id. at 910. In the present case, there was vast mitigation to support the jury's recommendation.
Dr. Appel, the court-appointed mental health expert, explained that as a young child Strausser had been physically and sexually abused by his stepfather, had been placed in the care of mental health professionals, and had been placed on psychotropic medication. As a young adult, he had been discharged from the Air Force after attempting suicide and several years later had again attempted suicide by shooting himself in the chest. Further, Dr. Appel testified: Strausser suffers from a bipolar disorder, depressive type, with manic episodes; Strausser had been taking the anti-depressive drug Prozac before the murder but had abruptly ceased taking it shortly before the crime because he could no longer afford it; Strausser was diagnosed after his arrest as being in a major depressive episode; and Strausser had been placed on various psychotropic drugs while awaiting trial.
In light of this and other mitigation, we conclude that the jury had a reasonable basis for recommending life imprisonment. Accordingly, the trial court erred in overriding the "conscience of the community." See Dolinsky v. State, 576 So.2d 271 (Fla.1991). We find the remainder of Strausser's claims to be without merit.
Based on the foregoing, we affirm the conviction but reverse the death sentence and remand for imposition of a life sentence without possibility of parole for twenty-five years.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The court found that the murder was especially heinous, atrocious or cruel, and that it was committed in a cold, calculated and premeditated manner.
[2] The court found that Strausser had no significant history of prior criminal activity.
[3] The court found that the following nonstatutory mitigating circumstances were established: 1) The abuse Strausser suffered at the hands of his stepfather, and the fact that Strausser came from a broken home and tended to his siblings for nine years; 2) Strausser suffers from depression and a personality disorder; 3) Strausser was severely abused as a child; 4) Strausser is remorseful; 5) Strausser had a good employment history; 6) Strausser behaved himself at trial; 7) Strausser has contributed to the community; and 8) Strausser is a good parent, husband, and family man.
[4] Strausser claims that the trial court erred in the following ways: 1) The court excluded a state expert from the rule of sequestration and allowed him to comment on Strausser's credibility; 2) the court allowed evidence of another crime to be admitted; 3) the court allowed a lay witness to offer an opinion concerning Strausser's sanity at the time of the crime; 4) Strausser's confession was involuntary; 5) (A) Elec's statement was inadmissible; 5) (B) a state witness should not have been allowed to read Strausser's letters; 5) (C) a videotape should have been excluded; 5) (D) two jurors should have been excluded for cause; 5) (E) cumulative error; 6) the jury override was improper.
[5] Although a court may at times permit an expert to remain in the courtroom during the testimony of the person who is the subject of the expert's evaluation, the expert's observations may be used only to facilitate a medical or scientific evaluation, not to assess the witness's credibility.