PARIENTE, J.,
concurring in result only.
I agree with the majority that the conviction and sentence should be affirmed. I write to address one discrete issue: whether the trial court erred in allowing the State’s expert witness Dr. McClaren to remain in the courtroom during all of the testimony of the defense’s penalty phase witnesses. I would specifically conclude that in this case the trial court’s ruling was error.
As the majority correctly recognizes, “section 90.616 adopts the view that sequestration is demandable as a matter of right.” Majority op. at 662-63. Although sequestration is demandable as a matter of right, section 90.616(2)(c) provides that a court may not exclude a witness who is shown to be “essential.” Further, the majority also correctly recognizes that “the burden is on the party seeking to avoid sequestration of a witness to demonstrate why the presence of the witness is essential.” Majority op. at 663.
The bottom line in this case is that the State failed to establish why the presence of Dr. McClaren during the defense’s penalty phase was essential and the trial court failed to make any findings as to why his presence was essential. Here, the State failed to proffer an adequate reason for its request to excuse Dr. McClaren from the rule of sequestration. The State merely noted that “the factual witnesses, such as the State’s aggravating evidence, as well as the background evidence that will be presented concerning the defendant, are the very type of things that a psychologist bases their expert opinion on.” The fact that an expert witness will hear “the very type of things” that he or she bases their expert opinion by remaining in the courtroom does not render their presence essential. If such a reason were adequate to excuse a witness from the rule of sequestration, then all experts would be exempt from the rule. There is no authority for such a blanket exception to the rule of sequestration. Rather, section 90.616(2)(c) requires the party seeking an exception from the rule for its witness to “show” that the witness’s presence is “essential to the presentation of the party’s cause.”
As to the trial court’s exercise of its discretion, the trial court failed to make any findings on whether Dr. McClaren’s presence was essential. Instead, it merely accepted the State’s assertion that the decision to permit the witness to remain in the courtroom is discretionary, noting, “I think it’s discretionary. He’s an expert and subject to cross. I’ll permit it.” Although the trial court correctly understood that such a determination was discretionary, the mere fact that Dr. McClaren is an expert does not automatically exempt him from the rule.
The ruling of the trial court is at odds with our precedent and is distinguishable from Burns v. State, 609 So.2d 600 (Fla. 1992), and Strausser v. State, 682 So.2d 539, 541 (Fla.1996). Bums is clearly distinguishable from the instant case because there the trial court determined that allowing the State’s psychologist to remain in the courtroom during testimony by the defendant and the defense’s psychologist was necessary because the defendant was not required to submit to an examination by the State’s expert and allowing the *675 State’s expert to remain was “the only avenue available for the state to offer meaningful expert testimony to rebut the defense’s evidence of mental mitigation.” 609 So.2d at 606. Further, this Court adopted rule 3.202 after Bums was decided, requiring the court to order that the defendant in a death penalty case be examined by the State’s mental health expert within forty-eight hours of a capital murder conviction. Hernandez was examined by Dr. McClaren pursuant to rule 3.202 after the jury returned a guilty verdict. Thus, Dr. McClaren’s presence during the presentation of the defense’s penalty phase case was not “the only avenue available” to the State to rebut the defense’s evidence of mental mitigation through expert testimony. See Burns, 609 So.2d at 606. Moreover, the State did not and could not explain why Dr. McClaren’s presence was essential as required under section 90.616(2)(c).
Stmusser is also distinguishable from this case. There, relying on Bums, this Court concluded that the trial court did not abuse its discretion in exempting the court-appointed expert from the rule of sequestration. However, in reaching this conclusion, the Court noted that the expert was “present only during the direct examination of [the defendant].” Strausser, 682 So.2d at 541 (emphasis added). In this case, Dr. McClaren was present for the entire penalty phase despite the fact that he had already examined Hernandez and absent any showing by the State or finding by the trial court that his presence was essential for the entire penalty phase, or for any portion of it.
To avoid any error in the future, the trial court should follow several steps in considering whether to exempt an expert witness from the rule of sequestration to ensure that discretion is being exercised in a manner consistent with both the rule and section 90.616(2)(c). First, trial courts should require the party seeking an exemption from the rule for its witness to demonstrate why the witness’s presence is essential. Then, the trial court should make a finding that the presence of the witness is essential, weighing any potential harm that might result from an exception to the rule of sequestration. Finally, once the trial court makes such a finding, it should then determine the portion of the testimony during which the presence of the witness is essential. Adherence to these guidelines, and a rejection of a blanket exception to the rule of sequestration, best serves to uphold the trial court’s discretion, the rule, and section 90.616(2)(c). See Knight, 746 So.2d at 430 (“The purpose of the rule of sequestration is ‘to avoid a witness coloring his or her testimony by hearing the testimony of another,’ thereby discouraging ‘fabrication, inaccuracy and collusion.’ ”) (quoting Charles W. Ehrhardt, Florida Evidence § 616.1 at 506 (1998 ed.)).
In this case, I conclude that the trial court abused its discretion in permitting Dr. McClaren to remain in the courtroom for the entire penalty phase, but agree that any error is harmless error beyond a reasonable doubt and that no prejudice can be demonstrated.[14] For this reason, I concur with the result reached by the majority.
QUINCE, C.J., and LEWIS, J., concur.

. Hernandez argues that the error was “inherently prejudicial,” or in the alternative, that the error was harmful under a harmless error analysis. While I disagree that the trial court’s action constituted per se reversible error, I agree with both Hernandez and the majority that the action is subject to a harmless error analysis.