997 So.2d 382 (2008)
Mark Anthony POOLE, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-1770.
Supreme Court of Florida.
December 11, 2008.
*387 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Mark Anthony Poole was indicted, tried, and convicted of attempted first-degree murder, armed burglary, armed robbery, sexual battery, and first-degree murder. Poole appeals his conviction and his sentence of death for the first-degree murder. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we affirm Poole's convictions but vacate his sentence of death and remand for a new penalty phase proceeding.

FACTS AND PROCEDURAL HISTORY
Mark Anthony Poole was convicted of the first-degree murder of Noah Scott, attempted first-degree murder of Loretta White, armed burglary, sexual battery of Loretta White, and armed robbery. Poole was convicted based on the following facts presented at trial. On the evening of October 12, 2001, after playing some video games in the bedroom of their mobile home, Noah Scott and Loretta White went to bed sometime between 11:30 p.m. and 12 a.m. Later during the night, White woke up with a pillow over her face and Poole sitting on top of her. Poole began to rape and sexually assault her as she begged Poole not to hurt her because she was pregnant. As White struggled and resisted, Poole repeatedly struck her with a tire iron. She put her hand up to protect her head, and one of her fingers and part of another finger were severed by the tire iron. While repeatedly striking White, Poole asked her where the money was. During this attack on White, Scott attempted to stop Poole, but was also repeatedly struck with the tire iron. As Scott struggled to defend White, Poole continued to strike Scott in the head until Scott died of blunt force head trauma. At some point after the attack, Poole left the bedroom and White was able to get off the bed and put on clothes but she passed out before leaving the bedroom. Poole came back in the bedroom and touched her vaginal area and said "thank you." White was in and out of consciousness for the rest of the night. She was next aware of the time around 8 a.m. and 8:30 a.m. when her alarm went off.
When her alarm went off, White retrieved her cell phone and called 911. Shortly thereafter, police officers were dispatched to the home. They found Scott unconscious in the bedroom and White severely injured in the hallway by the bedroom. White suffered a concussion and multiple face and head wounds and was missing part of her fingers. Scott was pronounced dead at the scene. Evidence at the crime scene and in the surrounding area linked Poole to the crimes. Several witnesses told police officers that they saw Poole or a man matching Poole's description near the victims' trailer on the night of the crimes. Stanley Carter stated that when he went to the trailer park around 11:30 that night, he noticed a black male walking towards the victims' trailer. Carter's observations were consistent with that of Dawn Brisendine, who knew Poole and saw him walking towards the victims' *388 trailer around 11:30 p.m. Pamela Johnson, Poole's live-in girlfriend, testified that on that evening, Poole left his house sometime in the evening and did not return until 4:50 a.m.
Poole was also identified as the person selling video game systems owned by Scott and stolen during the crime.[1] Ventura Rico, who lived in the same trailer park as the victims, testified that on that night, while he was home with his cousin's girlfriend, Melissa Nixon, a black male came to his trailer and offered to sell him some video game systems. Rico agreed to buy them for $50, at which point the black male handed him a plastic trash bag. During this exchange, Nixon got a good look at the man and later identified Poole when the police showed her several photographs. Nixon testified that the next morning, when her son was going through the trash bag, he noticed that one of the systems had blood on it.
Pamela Johnson also testified that on the same morning, she found a game controller at the doorstep of Poole's house, she handed it to Poole, and Poole put it in his nightstand. She indicated that she had never seen that game controller before that morning and did not know what it would be used for because neither she nor Poole owned any video game systems. During the search of Poole's residence, the police retrieved this controller. In addition, the police retrieved a blue Tommy Hilfiger polo shirt and a pair of Poole's Van shoes, shoes Poole said he had been wearing on the night of the crimes. A DNA analysis confirmed that the blood found on the Sega Genesis box, Super Nintendo, Sega Dreamcast box and controller matched the DNA profile of Scott. Also, a stain found on the left sleeve of Poole's blue polo shirt matched White's blood type. The testing of a vaginal swab also confirmed that the semen in White was that of Poole. A footwear examination revealed that one of the two footwear impressions found on a notebook in the victims' trailer matched Poole's left Van shoe. The tire iron used in the crimes was found underneath a motor home located near the victims' trailer. A DNA analysis determined that the blood found on this tire iron matched Scott's DNA profile.
Based on this evidence, the jury returned a verdict finding Poole guilty on all charges, including first-degree murder. Following the penalty phase, the jury recommended death by a vote of twelve to zero. The trial court followed the jury's recommendation and sentenced Poole to death. The trial court found two statutory aggravating circumstances: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person, and (2) the murder was especially heinous, atrocious, or cruel. The court also found three statutory mitigators and numerous nonstatutory mitigators. The statutory mitigators were: (1) the crime for which Poole was to be sentenced was committed while he was under the influence of extreme mental or emotional disturbance (moderate weight); (2) Poole's capacity to conform his conduct to the requirements of law was substantially impaired (moderate weight); and (3) Poole had no significant history of prior criminal activity (little weight). The nonstatutory mitigators were: (1) Poole is of borderline intelligence (some weight); (2) Poole received a head injury, which created dementia (little weight); (3) Poole's age at the time of the crime linked with mental deficiency and *389 lack of serious criminal history (moderate weight); (4) Poole dropped out of school due to his low intelligence and learning disabilities (little weight); (5) Poole lost Mr. Bryant, his "best friend, father figure, employer," and that had an emotional effect on Poole and led to his drug use (some weight); (6) Poole sought help for his drug problem in the past (little weight); (7) Poole had an alcohol abuse problem at the time of the crime (little weight); (8) Poole had a drug abuse problem at the time of the crime (little weight); (9) Poole does not have antisocial personality disorder nor is he psychopathic (some weight); (10) Poole has and can continue a relationship with his son (minimum weight); (11) Poole has a strong work ethic (little weight); (12) Poole has a close relationship with his family (moderate weight); (13) Poole is a religious person (little weight); and (14) the murder and rape were impulsive excessive acts, not premeditated acts (little weight). The trial court determined that these mitigating factors did not outweigh the aggravating circumstances and, as a result, the trial court sentenced Poole to death on the count of first-degree murder. The trial court also sentenced Poole to consecutive life sentences for the attempted first-degree murder of Loretta White, armed burglary, sexual battery of Loretta White, and armed robbery.
In this appeal, Poole raises four issues: (1) whether the trial court abused its discretion in denying Poole's motion for mistrial when the prosecutor repeatedly commented during closing argument on Poole's failure to testify at trial and his silence after his arrest; (2) whether the prosecutor violated Poole's right to a fair penalty phase proceeding by cross-examining defense witnesses about unproven prior arrests, the unproven content of a tattoo, and lack of remorse; (3) whether the prosecutor violated Poole's right to a fair penalty phase proceeding by misleading the jurors about their responsibilities in recommending a sentence; and (4) whether Florida's death penalty statute violates the Sixth Amendment right to trial by jury.

ANALYSIS

Prosecutorial Comments during Guilt Phase
Poole first asserts the trial court erred in denying his motion for mistrial when the prosecutor repeatedly commented in closing argument during the guilt phase on Poole's failure to testify at trial and his silence after his arrest. In making this argument, Poole cites several statements made by the prosecutor before defense counsel objected and moved for a mistrial. We find that the first two comments were not contemporaneously objected to and, as a result, are not properly preserved for appellate review. We also find that although the last comment was an erroneous prosecutorial comment on silence, the trial court did not abuse its discretion in denying the motion for mistrial.
The prosecutor began by stating that the defense's argument came from "Fantasy Land." A few sentences later, the prosecutor stated, "Well, there is no evidence in this case that at any time, either in this trial or anywhere else, Mr. Poole ever acknowledged that he did anything." A few paragraphs later, the prosecutor continued:
Mr. Poole talked to the police. And Mr. Pooleso that there's this other guy that was involved. Well, there's no evidence. Keep in mind what's evidence and what's argument. Mr. Dimmig is arguing all these things, but there is absolutely no evidence that Mr. Poole ever said, hey, somebody else was there before me and these people's heads were bashed in. There is no evidence of that.

*390 And there's no evidence that Mr. Poole ever said, well, I went in there and raped her and left her and then somebody else came in and beat their heads in. There's no evidence of that either. That's argument. But when you look at what the testimony is and what the physical evidence is and what the photographs are, there is no evidence to support that theory.
....
And if Mr. Poole wants to tell the state and Detective Grice that somebody helped him commit this crime, then let him come forward because
At this point, defense counsel objected and moved for a mistrial, arguing that the prosecutor's comments violated Poole's right to remain silent. The prosecutor argued that defense counsel's argument that Poole admitted to three of the crimes opened the door. After the prosecutor stated that he would not take the argument any further, the trial judge denied the motion for mistrial.
The first two comments that Poole alleges were improper were not followed by an objection.[2] We have consistently held that "the failure to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review." Card v. State, 803 So.2d 613, 622 (Fla.2001). However, we have carved out an exception to the contemporaneous objection rule when the unobjected-to comments rise to the level of fundamental error, that is, an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty or jury recommendation of death could not have been obtained without the assistance of the alleged error." Id. at 622. Neither of the two comments rises to the level of fundamental error because both comments were invited responses to the defense's closing argument. During his closing argument, defense counsel stated that Poole acknowledged that he committed the crimes of sexual battery, robbery, and burglary but denied that he was the person who inflicted the injuries on White and Scott. In response, the prosecutor was arguing that there was no evidence in the case to support the argument that Poole acknowledged that he committed those crimes or to support the argument that someone else inflicted the injuries on the victims. Because the prosecutor's comments were invited responses, the comments cannot be deemed improper. See Walls v. State, 926 So.2d 1156, 1166 (Fla.2006); see also Dufour v. State, 495 So.2d 154, 160-61 (Fla. 1986). Therefore, these comments do not warrant reversal.
The final comment"And if Mr. Poole wants to tell the state and Detective Grice that somebody helped him commit this crime, then let him come forward because...."was objected to. Moreover, we find that this comment was an improper comment on Poole's failure to testify. Under article I, section 9 of the Florida Constitution, a defendant has the constitutional right to decline to testify against himself in a criminal proceeding. Therefore, "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." Rodriguez v. State, 753 So.2d 29, 37 (Fla. 2000) (quoting State v. Marshall, 476 So.2d 150, 153 (Fla.1985)). In the instant case, *391 the prosecutor's comment impermissibly suggested a burden on Poole to prove his innocence by stating that he had to come forward and testify. Although this was an erroneous comment on Poole's silence, we find that the trial court did not abuse its discretion in denying the motion for mistrial because in light of the evidence linking Poole to the crimes, the error was not "so prejudicial as to vitiate the entire trial." Dessaure v. State, 891 So.2d 455, 464-65 (Fla.2004).[3] The evidence presented demonstrates that Poole was seen heading towards the victims' trailer on the night of the crime; Poole sold video games like those taken from the victims' residence immediately after the attack; the semen found in White matched Poole; Poole's shoeprint matched a shoeprint left inside the victims' trailer; and a stain found on Poole's shirt matched White's DNA profile.
Accordingly, relief is not warranted on this claim.

Prosecutor's Cross-Examination of Defense Witnesses
Poole next contends that the prosecutor violated his right to a fair penalty phase by cross-examining defense witnesses about unproven prior arrests, the unproven content of a tattoo, and lack of remorse. The questions regarding Poole's lack of remorse were not followed by a contemporaneous objection, and therefore the claim is unpreserved. However, the trial court erred in overruling defense counsel's objection after the prosecutor asked questions regarding unproven prior arrests and the unproven content of a tattoo. These errors were not harmless and require a new penalty phase proceeding.
Poole first argues that the trial court erred in permitting the prosecutor to use references to Poole's prior criminal record to impeach a defense mitigation witness, Joe Poole, Jr., who was Poole's older brother. During the prosecutor's cross-examination of Joe Poole, Jr., the following questions were asked:
Q: If you're that close to your brother, do you know if this was the first time he ever got arrested when he got arrested for this crime?
A: No.
Q: You don't know?
A: No, it's not his first time getting arrested.
Q: He got arrested in Georgia, South Carolina, Texas.
Defense counsel objected based on improper impeachment and argued that the line of questioning was improper because the defense was not asking for lack of prior criminal history and defense counsel specifically indicated this in his motion for limine before the penalty phase. The prosecutor argued that the line of questioning was appropriate not only because the question went to the credibility issue of how well Poole's older brother knew Poole, but also because the defense had put on evidence of Poole's reputation. The trial judge overruled the objection but directed the prosecutor not to go into any further details.
*392 The prosecutor's line of questioning regarding Poole's prior criminal history was improper, and the trial court erred in overruling the defense objection. At the beginning of the penalty phase, the defense filed a motion to exclude evidence of Poole's prior criminal activity, which also indicated that the defense would not ask for the mitigator of no significant prior criminal history. The State agreed that the motion should be granted and also agreed that they would not bring up Poole's criminal history unless the defense tried to put on such evidence. The trial court granted the motion by stipulation. Defense counsel followed through with the motion and did not put on any evidence of Poole's prior criminal history. However, the prosecutor still improperly presented inadmissible evidence of Poole's prior criminal activity under the guise of witness impeachment. Under section 921.141, Florida Statutes (2007), the State is only permitted to present evidence of those aggravators listed under subsection 5, which does not include a defendant's convictions for nonviolent felonies. See Hitchcock v. State, 673 So.2d 859, 861 (Fla.1996) ("[T]he State is not permitted to present evidence of a defendant's criminal history, which constitutes inadmissible nonstatutory aggravation, under the pretense that it is being admitted for some other purpose.").
The trial court's error of overruling defense counsel's objection to this line of questioning was not harmless. See Rodriguez v. State, 753 So.2d 29 (Fla.2000) (finding that the proper standard of review for an overruled objection is a harmless error standard). First, contrary to the State's argument, while Joe Poole, Jr. did not answer the last question in this line of questioning, he did state that Poole had been arrested before; then the prosecutor explicitly listed the states where Poole had been arrested for other crimes. By this point, the damage had been done and the jury knew that Poole had a criminal history. Although information about Poole having committed burglaries came out through the testimony of the defense mental health expert, Dr. William Kremper, we cannot say whether, in the absence of prosecutor's questions to Joe Poole, Jr., the jury would have still heard about this history through Dr. Kremper's testimony. Dr. Kremper's testimony followed Joe Poole, Jr.'s testimony, and we cannot now determine whether defense counsel would have presented such evidence if the prosecutor had not elicited testimony from Joe Poole Jr. about the defendant's criminal history.
This error cannot be deemed harmless because the prosecutor's questions to Poole, Jr. suggested that Poole was a career felon in numerous states, and he created a risk that the jury would give undue weight to such information in recommending a death sentence. We have consistently held that where the State presents evidence that constitutes inadmissible nonstatutory aggravation, the error is not harmless. See, e.g., Perry v. State, 801 So.2d 78, 89 (Fla.2001) (holding that the introduction of evidence that constituted impermissible nonstatutory aggravation was not harmless because the evidence was highly inflammatory and could have unduly influenced the penalty phase jury); see also Kormondy v. State, 703 So.2d 454, 463 (Fla.1997) (concluding that the admission of impermissible evidence of nonstatutory aggravation was not harmless error and stating that "[t]he jury is charged with formulating a recommendation as to whether [the defendant] should live or die [and] turning a blind eye to the flagrant use of nonstatutory aggravation jeopardizes the very constitutionality of our death penalty statute"); Geralds v. State, 601 So.2d 1157, 1162-63 (Fla.1992); Maggard v. State, 399 So.2d 973 (Fla.1981).
*393 The prosecutor also improperly asked Joe Poole, Jr. questions regarding the content of a tattoo on Poole's body. During cross-examination, the prosecutor asked Joe Poole, Jr. if Poole had tattoos on his body. Defense counsel objected and moved for a mistrial, arguing that the line of questioning was irrelevant. The prosecutor argued that the defense opened the door by making Poole look like an "angel" and that the "Thug Life" tattoo would show that there is another side to him. The trial court overruled the objection and found that the questions went to Joe Poole, Jr.'s credibility because he stated that he knew Poole better than anybody. The prosecutor then continued to ask Joe Poole, Jr. questions about the tattoo:
Q: Do you know how many tattoos Mark's got?
A: No, sir, I do not. I know of one.
Q: What's one say?
A: It should [say] "MP." I have "JLP." That's the first one we put on and wished we never did that because we got in much, much trouble behind that.
Q: From your parents?
A: From our parents.
Q: Okay. Well, doesn't he have a tattoo that says Thug Life right across his abdomen?
A: I haven't looked at his stomach, sir.
Q: So although you know him as well as you told this jury, you didn't know he had that?
A: No. I haven't examined his body.
Q: Okay. Well, but you said you just saw him a few years ago.
A: Right. Well, he had clothes on. He wasn't naked.
Defense counsel objected again and moved for a mistrial, arguing that the prosecutor was improperly testifying to factual issues after Joe Poole, Jr. said he did not know about the "Thug Life" tattoo. The trial court overruled the objection again and denied the motion.
Similar to the questions regarding Poole's prior criminal activity, these questions regarding the "Thug Life" tattoo were improper because they constituted inadmissible nonstatutory aggravation. While the State argues that the questions went to Joe Poole, Jr.'s credibility, we reiterate the rule that the State cannot introduce inadmissible nonstatutory aggravation under the guise of impeachment. See Geralds, 601 So.2d at 1162. This error was not harmless because the information regarding the tattoo prejudiced Poole in the eyes of the jury and could have unduly influenced the jury in recommending the death penalty.
Poole also asserts that the prosecutor's questions to Poole's mother, older sister, and nephew about Poole's lack of remorse were improper because lack of remorse is an inadmissible nonstatutory aggravator. This claim is unpreserved for appellate review because there was no objection made in the trial court. See Card, 803 So.2d at 622. Defense counsel failed to object to any of the prosecutor's questions regarding Poole's lack of remorse during the testimony of the witnesses. It was during a short recess, after all three witnesses testified, that defense counsel raised the issue about the lack of remorse questions. In fact, defense counsel did not object, but simply raised a concern that the prosecutor had impermissibly asked questions about Poole's lack of remorse when the defense had not raised remorse as a mitigator. The prosecutor responded that defense counsel failed to object at any point during these questions, but agreed to stop asking such questions.
Because defense counsel failed to object to the prosecutor's questions on lack of remorse, this claim can only be raised on *394 appeal if the alleged error is fundamental. Id.; see also McDonald v. State, 743 So.2d 501, 505 (Fla.1999). Having reviewed the unobjected-to questions asked by the prosecutor, we conclude that none of the questions were so egregious as to reach "down into the validity of the trial itself to the extent that a verdict of guilty or jury recommendation of death could not have been obtained without the assistance of the alleged error." Urbin v. State, 714 So.2d 411, 418 n. 8 (Fla.1998) (quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)). After defense counsel raised the concern regarding the prosecutor's questions, the prosecutor stated that he would not continue to ask such questions. A review of the penalty phase proceeding demonstrates that the prosecutor did not in fact continue to ask any defense witness whether Poole was remorseful for his actions. The prosecutor also did not argue lack of remorse in his closing arguments. However, we continue to caution prosecutors that this type of questioning should not take place when the defendant has not made remorse an issue in the penalty phase.
While the questions on Poole's lack of remorse do not individually amount to fundamental error, we find that the cumulative effect of this error and the error of presenting inadmissible nonstatutory aggravation of Poole's criminal history and the content of his tattoo deprived Poole of a fair penalty phase. The combination of these errors had the effect of unfairly prejudicing Poole in the eyes of the jury because these errors created a risk that the jury would give undue weight to this information in recommending the death penalty.
Accordingly, we vacate Poole's sentence of death and remand for a new penalty phase.

Prosecutorial Comments During Penalty Phase
Poole contends that he was denied a fundamentally fair penalty phase because the prosecutor made several improper comments during the penalty phase closing arguments. While Poole argues that the prosecutor made several improper comments, defense counsel only objected to the following comment that the prosecutor made near the end of his closing argument:
I don't think when you look at it from the perspective that this decision is any more difficult than the other. I'm only thinking that when you go back in that room and make that vote and you head for your car this afternoon, you're not going to find yourself feeling the same way. You're just going to find that you did your job just like you promised to do when you raised your right hand and swore to that oath.

Defense counsel objected and moved for a mistrial, arguing that the prosecutor's comment suggested that it was the jury's duty to recommend death. The trial court denied the motion.
Poole now contends that this comment improperly suggested that the jurors promised and took an oath to recommend the death penalty. On the other hand, the State argues that the prosecutor was asking the jurors to weigh the evidence in aggravation and mitigation. We find that that the trial court did not abuse its discretion in denying defense's motion for mistrial because the prosecutor was not suggesting that it was the jurors' sworn duty to recommend death. Throughout the closing argument, the prosecutor argued that the aggravators had been proven beyond a reasonable doubt and also attempted to rebut some of the mitigators. At the conclusion of making these arguments, the prosecutor, as an advocate for the State, *395 was attempting to persuade the jury that based on the aggravators and mitigators, they should recommend a death sentence. The prosecutor made the last comment to inform the jury that they should do their jobs as they promised to do when they took the oath, which is to weigh the mitigators and aggravators. This type of comment is not improper.
Defense counsel failed to contemporaneously object to the other comments that Poole now contends were improper. As a result, these claims were not properly preserved for appellate review. Additionally, because none of these comments rise to the level of fundamental error, there are no grounds for reversal. See Merck v. State, 975 So.2d 1054, 1064 (Fla.2007), cert. denied, ___ U.S. ___, 129 S.Ct. 73, 172 L.Ed.2d 66 (2008).
As to the first alleged improper comment, Poole argues that the prosecutor misled the jury by misstating the law concerning the weighing of aggravating and mitigating circumstances.[4] The first part of the comment was not improper because in discussing the heinous, atrocious or cruel aggravator, the prosecutor was attempting to argue that this aggravator should be given significant weight, and that it alone outweighed the defense's case in mitigation due to the overwhelming evidence that proved the aggravator. However, the second part of the comment was improper because the prosecutor was suggesting that unless the mitigating circumstances outweighed the aggravating circumstances, the jury had to vote for a death sentence. We have repeatedly held that a jury is not required to recommend a sentence of death when the aggravators outweigh the mitigators. See Brooks v. State, 762 So.2d 879 (Fla.2000); Henyard v. State, 689 So.2d 239 (Fla.1996). While this comment was improper, the comment still does not amount to fundamental error. The prosecutor did not repeat this statement during the rest of his closing arguments. Moreover, at the end of closing arguments, the trial judge read the standard jury instructions, which included an accurate statement of the law.
Poole next alleges that the prosecutor belittled evidence in mitigation and commented on matters not in evidence.[5] This comment was not improper because the prosecutor was attempting to rebut mitigating evidence argued by the defense. During the penalty phase, defense counsel admitted into evidence a photograph of Poole when he was a child and a photograph of the church Poole's family attended. Defense counsel used these photographs *396 and asked Poole's family members questions about attending church to demonstrate in mitigation that Poole was a good, loving person who came from a good family. The prosecutor responded during his closing argument that although Poole was a child who went to church at one time, he was not a child anymore, but a thirty-nine-year-old man who committed a crime.
Lastly, Poole alleges that the prosecutor misstated the law concerning brain damage as a mitigating circumstance: "Youyou are free to reject it if you want and say I don't think brain damage mitigates against the death penalty." When we consider this comment in the context in which it was made, we find that the comment was not improper. The prosecutor acknowledged that it was uncontroverted that Poole had brain damage, but was arguing that it was not enough to recommend a life sentence. In fact, the prosecutor even emphasized that the jury should accept the brain damage mitigator as proven if there was evidence to demonstrate that Poole did, in fact, have brain damage.
Because the prosecutor's comments were either not improper or did not constitute fundamental error, we deny relief on this claim.

Constitutionality of Section 921.141
Poole asserts that Florida's death penalty statute violates the Sixth Amendment because it does not require express unanimous findings of aggravating circumstances by the jury. Poole argues that the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires that all aggravators necessary for the imposition of the death penalty must be found by the jury. Poole also requests that we reconsider our holding in State v. Steele, 921 So.2d 538 (Fla.2005), in which we held that the finding of at least one aggravator is implicit in the jury's recommendation of death.
First, the Court's decision in Ring does not require a finding that Florida's capital sentencing scheme is unconstitutional. In Steele, we not only concluded, consistent with prior case law, that section 921.141, Florida Statutes (2007), does not require jury findings on aggravating circumstances, but we specifically held that it is a departure from the essential requirements of law to use a special verdict form detailing the jury's determination on the aggravating circumstances. 921 So.2d at 544-48. Moreover, since the Ring decision, we have rejected similar arguments that Florida's death penalty statute is unconstitutional based on Ring. See Marshall v. Crosby, 911 So.2d 1129 (Fla.2005); Bottoson v. Moore, 833 So.2d 693 (Fla.2002); King v. Moore, 831 So.2d 143 (Fla.2002).
Moreover, the jury unanimously found that Poole committed the crimes of attempted first-degree murder of White, sexual battery of White, armed burglary, and armed robbery, during the course of the first-degree murder of Scott. We have repeatedly found that the prior violent felony conviction aggravator takes a case outside the scope of Ring. Guardado v. State, 965 So.2d 108 (Fla.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 1250, 170 L.Ed.2d 90 (2008); Smith v. State, 866 So.2d 51, 68 (Fla.2004); Johnston v. State, 863 So.2d 271, 286 (Fla.2003) (finding that the existence of a prior violent felony conviction satisfied the constitutional mandates because the conviction was heard by a jury and determined beyond a reasonable doubt).
Accordingly, relief is not warranted on this claim.

*397 Sufficiency of the Evidence

Poole has not argued the sufficiency of the evidence supporting the conviction. Nonetheless, it is our duty to independently review the entire record. See Fla. R.App. P. 9.142(a)(6); see also Jones v. State, 963 So.2d 180 (Fla.2007). It is abundantly clear from the physical evidence and eyewitness testimony that Poole committed the murder of Scott, as well as the attempted murder of White, sexual battery of White, robbery, and burglary. Therefore, we uphold the first-degree murder conviction.

CONCLUSION
For the reasons expressed above, we affirm Poole's convictions. However, based on the prosecutor's improper cross-examination of defense witnesses, we vacate his sentence of death and remand the case to the trial court to conduct a new penalty phase proceeding consistent with this opinion.
It is so ordered.
QUINCE, C.J., and WELLS and LEWIS, JJ., concur.
PARIENTE, J., concurs in result only with an opinion in which ANSTEAD, J., concurs.
CANADY and POLSTON, JJ., did not participate.
PARIENTE, J., concurring in result only.
I concur with the majority's opinion vacating the death sentence as a result of reversible error based on the cumulative effect of the State presenting inadmissible nonstatutory aggravation of Poole's criminal history and the content of his tattoo, as well as the questions on lack of remorse. The majority's opinion is that the combination of these errors deprived Poole of a fair penalty phase. See majority op. at 393-94.
I concur in result only because of my disagreement with the majority's use of the mistrial standard rather than the harmless error standard as to the objected-to portions of the closing argument in the guilt phase on Poole's failure to testify at trial and his silence after arrest. For the reasons more extensively set forth in my special concurrence in Salazar v. State, 991 So.2d 364 (Fla.2008), I do not agree with the majority's use of the mistrial standard in this case because counsel both objected and moved for a mistrial. See majority op. at 390-91. Instead, the majority should employ the harmless error standard because Poole preserved the issue for review by objection and motion for mistrial. This standard is especially appropriate here where there is a clearly impermissible comment on Poole's constitutional right to remain silent.
There are at least two reasons for using the harmless error standard. First, it is consistent with our precedent in Parker v. State, 873 So.2d 270 (Fla.2004). Second, the standard applied by the majority in this case is virtually identical to that for fundamental error so essentially we are applying the same standard to objected-to error in combination with a motion for mistrial and unobjected-to error. See majority op. at 391. "Fundamental error is error that reaches `down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Jones v. State, 949 So.2d 1021, 1037 (Fla.2006) (quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)). Similarly, "[a] motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial." England v. State, 940 So.2d 389, 401-02 (Fla.2006). We should not equate objected-to error *398 with unobjected-to error, particularly where the prosecutor makes a clearly impermissible comment on the right to remain silent and the defense objects.
Consider what happened in this case. In closing argument, after stating that the defense argument came from "Fantasy Land," the prosecutor made two comments that were not objected to and could be characterized as "invited error" as explained by the majority. But then the prosecutor remarked:
And if Mr. Poole wants to tell the state and Detective Grice that somebody helped him commit this crime, then let him come forward because
It was at this point that defense counsel objected and moved for a mistrial, arguing that the prosecutor's comments violated Poole's right to remain silent.
The prosecutor attempted to justify his argument by claiming that defense counsel had "opened the door," but then told the trial judge "he would not take the argument any further." The trial court never sustained the objection and only denied the motion for a mistrial. Thus, the jury heard the objection but never learned that the comment was impermissible.[6]
I would therefore review the error based on the harmless error standard. The harmless error test properly "places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). As this Court explained in DiGuilio, comments on the right to remain silent are high-risk errors but the errors are not per se reversible. Id. at 1135.
In the end, however, I concur with the majority's result in affirming the conviction, because I conclude that the prosecutor's improper comment was harmless beyond a reasonable doubt. First, the impermissible remark was not repeated or emphasized. See, e.g., Fitzpatrick v. State, 900 So.2d 495, 517 (Fla.2005) (determining that witness's improper comment on defendant's silence was harmless beyond a reasonable doubt because there was overwhelming permissible evidence of the defendant's guilt, the comment was neither repeated nor emphasized, and the trial judge expressly indicated the lack of importance he believed the jury attributed to the remark). Second, the improper comment was later followed by the trial court's instruction to the jury that the burden rested with the State and that "[t]he defendant is not required to present evidence or prove anything." The court also instructed the jury that Poole had the right not to testify and that the jury must not view Poole's failure to testify as an admission of guilt or be influenced by his decision in any way. See, e.g., Hitchcock v. State, 755 So.2d 638, 643 (Fla.2000) (concluding that prosecutor's erroneous comments during closing arguments about what the jury could consider in mitigation were harmless where the comments were followed by a correct explanation of mitigation and where the judge gave the mitigating circumstance at issue "some weight" in sentencing).
*399 Third, although the amount of evidence is not the test of harmless error, in this case there was overwhelming permissible evidence of Poole's guilt. Cf. DiGuilio, 491 So.2d at 1138 (finding improper comment on post-arrest silence to be harmful error in part because "the permissible evidence was not clearly conclusive"). The evidence demonstrated that Poole was seen by a neighbor walking towards the victims' trailer on the night of the crimes; Poole sold video games like those taken from the victims' residence immediately after the attack; and Poole's live-in girlfriend found a game controller on the porch of Poole's residence the following morning. Moreover, the State presented physical evidence linking Poole to the crimes, including semen found in victim Loretta White matching Poole's genetic profile, a shoeprint on a notebook in the victims' trailer matching Poole's shoeprint, a stain found on the sleeve of Poole's shirt matching White's DNA profile, and blood found on three game systems and a game controller, which were possessed by Poole after the crimes, matching victim Noah Scott's DNA profile.
Nevertheless, I emphasize that what we made clear over two decades ago about the harmless error test bears repeating:
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. This rather truncated summary is not comprehensive but it does serve to warn of the more common errors which must be avoided.
DiGuilio, 491 So.2d at 1138. And, as we emphatically stated in DiGuilio: "We wish to emphasize that any comment, direct or indirect, by anyone at trial on the right of the defendant not to testify or to remain silent is constitutional error and should be avoided." Id. at 1139.
Clearly, this prosecutor did not get the message of DiGuilio and its progeny, and he risked reversal of the guilt phase by making this impermissible closing argument. In this case, an objection was made to the impermissible comment and the trial court should have acted on it. What we stated in Bertolotti v. State, 476 So.2d 130 (Fla.1985), rings true today, especially in death penalty cases:
Moreover, we commend to trial judges the vigilant exercise of their responsibility to insure a fair trial. Where, as here, prosecutorial misconduct is properly raised on objection, the judge should sustain the objection, give any curative instruction that may be proper and admonish the prosecutor and call to his attention his professional duty and standards of behavior.
Id. at 134.
For these reasons, I concur in the majority's opinion vacating the death sentence, and concur in result only in the majority's opinion affirming on the issue of the prosecutor's improper comments on Poole's failure to testify at trial and his silence after arrest.
ANSTEAD, J., concurs.
NOTES
[1] White testified that Scott owned a Sega Genesis, Sega Dreamcast, and Super Nintendo.
[2] The first comment was: "Well, there is no evidence in this case that at any time, either in this trial or anywhere else, Mr. Poole ever acknowledged that he did anything." The second comment started with the prosecutor stating, "Mr. Poole talked to the police" and ending with "there is no evidence to support that theory."
[3] We recognize that generally, the proper standard of review for an overruled objection based on a comment on a defendant's right to remain silent or defendant's failure to testify is a harmless error test. See Heath v. State, 648 So.2d 660 (Fla.1994); see also State v. Marshall, 476 So.2d 150 (Fla. 1985). However, this standard does not apply here because after defense counsel simultaneously objected and moved for a mistrial, the trial judge never ruled on the objection, but simply denied defense counsel's motion for mistrial. As a result, the trial court's ruling on the motion for mistrial is reviewed under an abuse of discretion standard. Dessaure v. State, 891 So.2d 455, 464-65 & n. 5 (Fla.2004) (citing Cole v. State, 701 So.2d 845 (Fla. 1997)).
[4] The prosecutor stated:

What sets this crime apart so much from other crimes that the death penalty is the only conclusion you can come to? The fourth aggravating factor, heinous, atrocious and cruel.
... I submit to you that it is an overwhelming aggravating circumstance that can never be overcome in a case like this.
....
So now what weighs against that? I say to you that that scale is so far down here that there is nothingand the judge will tell you once you find that sufficient aggravating circumstances exists [sic] to warrant the death penalty, unless you find that the mitigating circumstances outweigh them. . . unless something is going to push this scale back down, then your vote has got to be for the death penalty. I tell you that [it] has to be twelve to nothing again.
[5] The prosecutor argued:

This is what you saw. A picture of a church, isn't that nice. When did he go to this church? When he was like 12, 16, 19. He is 39 years old when he murdered this boy. 39. Does it matter what he looked like in this picture? Was Ted Bundy okay in the fourth grade? I don't care, and I think you shouldn't care what he was doing in the fourth grade. A nice little picture in the fourth grade.
[6] As the majority explains, the final objected-to comment was an impermissible comment on Poole's failure to testify. As pointed out by the majority, "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." Rodriguez v. State, 753 So.2d 29, 37 (Fla.2000) (emphasis added) (quoting State v. Marshall, 476 So.2d 150, 153 (Fla. 1985)).