# Supreme Court of Florida

_____

No. SC13-2048
_____

**MIGUEL OYOLA,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[February 19, 2015]

PER CURIAM.

This case is before the Court on appeal from the trial court's Second Revised Sentencing Order that sentenced Miguel Oyola to death for the first-degree murder of Michael Lee Gerrard. In Oyola v. State, 99 So. 3d 431 (Fla. 2012), this Court affirmed Oyola's convictions for first-degree murder, false imprisonment, armed robbery with a deadly weapon, and grand theft of a motor vehicle. However, we reversed and remanded the original sentencing order to the trial court on the basis that it violated Campbell v. State, 571 So. 2d 415 (Fla. 1990). On remand, the trial court again sentenced Oyola to death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

## FACTS

### Original Guilt and Penalty Phases

On the day he was murdered, Gerrard called Wakulla Bank with regard to unusual transactions on the debit card used for his landscaping business. Oyola, 99 So. 3d at 435. Evidence established that Oyola, an employee of Gerrard's landscaping business who had been in possession of a debit card on the business account, had recently used the card for purchases that totaled approximately $900 and withdrew an additional $900 in cash using the debit card. Later that day, a truck driver in a remote area of Jefferson County saw two men later identified as Oyola and Gerrard engaged in a bloody fight in a trailer attached to a truck. The truck driver left to summon help, but by the time he returned, Gerrard was alone. Oyola had left with the truck and attached trailer, which were later determined to have belonged to Gerrard. The truck driver called 911, but Gerrard died before police arrived. The medical examiner determined that Gerrard had been stabbed several times with a knife and hit with a blunt, shovel-like object. Id. at 435-38.

Other evidence suggested that Oyola attempted to dispose of evidence of the crime. His girlfriend testified that she saw him bathing in bleach; when she asked about a trash bag with pants inside, he told her that if she knew what was inside, she would be sick. Another witness found the trailer that had been attached to Gerrard's truck abandoned and on fire in Leon County. From the pattern of blood

stains in the trailer, investigators deduced that someone had been locked inside and attempted to force his way out.  Id. at 436-37.

When suspicion fell on Oyola for the murder, he proclaimed his innocence. He told officers that he had spoken to Gerrard on the phone that day, but had otherwise mostly remained at home.  He claimed that Gerrard had instructed him to use the business debit card to purchase Christmas gifts.  Oyola also proclaimed his innocence to a family friend of Gerrard and asserted that Gerrard had left money in Oyola's mailbox on the day of the murder.  However, after he was arrested for murder, Oyola confessed to his cellmate that he had killed Gerrard, stolen his truck and $375, and disposed of some of the evidence.  He also told his cellmate that he planned to plead insanity or self-defense during trial.  Id. at 437-38.

The jury found Oyola guilty of first-degree murder, false imprisonment, armed robbery with a deadly weapon, and grand theft of a motor vehicle.  During the penalty phase, Oyola presented his brother, Manuel, and a forensic psychologist, Dr. Thomas D'Errico, as witnesses.  Manuel testified to the abuse he and Oyola suffered as children at the hands of their parents, which Manuel believed negatively affected his brother's intellectual development and ability to cope with stress.  Id. at 439.

Dr. D'Errico testified concerning Oyola's mental condition, which included a diagnosis of schizoaffective disorder, low test scores in school, and borderline intellectual functioning.[1] Oyola had also given Dr. D'Errico an inconsistent account of his activities on the day of the murder and how he had killed Gerrard. Because Oyola had not taken his medication when he murdered Gerrard, Dr. D'Errico concluded that it was likely that Oyola overreacted to the perceived threat of an angry Gerrard and was less able to conform his conduct to the requirements of law. However, during cross-examination, Dr. D'Errico admitted that Oyola attempted to destroy evidence and that Oyola told him a version of events that was inconsistent with the evidence. The jury recommended a sentence of death for the murder of Gerrard by a vote of nine to three. Id. at 439-42.

In the original sentencing order, the trial court found three aggravating circumstances: (1) the murder was committed while Oyola was on felony probation;[2] (2) the murder was committed during a robbery,[3] which merged with the aggravating circumstance of pecuniary gain; and (3) the murder was especially heinous, atrocious, or cruel (HAC).[4] The court assigned great weight to each

---

1. Oyola has a full-scale IQ score of 74.

2. § 921.141(5)(a), Fla. Stat. (2007).

3. § 921.141(5)(d), Fla. Stat.

4. § 921.141(5)(h), Fla. Stat.

aggravating factor. The court rejected the mental health of Oyola as a statutory mitigating circumstance, but did consider some factors in Oyola's background as nonstatutory mitigating circumstances:

> The Defendant prepared a sentencing memorandum suggesting all non-statutory mitigation he believed had been presented to either the jury or the Court at the separate sentencing hearing. The defendant submitted a transcript of an interview of Manuel Oyola and Leonardo Oyola,[5] for this Court's consideration. Such transcripts were reviewed and considered. Each suggestion of non-statutory mitigation will be addressed in this order.
>
> The alleged non-statutory mitigation included serious drug abuse, an abusive home life as a child, created a cycle of violence [sic], and mental disorder. While the evidence did establish such circumstances, the Court gives such circumstances slight weight in weighing the aggravating circumstances against the mitigating circumstances.
>
> Neither the circumstances in the defendant's character, background or life, nor the circumstances of the offense mitigate against the imposition of the death penalty.

Oyola's first direct appeal proceeding followed this order that sentenced him to death.

### First Direct Appeal

Oyola presented several issues in his first direct appeal to this Court. He asserted that: (1) the trial court improperly assigned great weight to the HAC aggravating factor; (2) the trial court improperly rejected his mental health status as both a statutory and a nonstatutory mitigating factor; (3) the sentencing order

---

5. Leonardo Oyola is Oyola's father.

violated Campbell; and (4) Florida's death penalty statute is unconstitutional under

Ring v. Arizona, 536 U.S. 584 (2002). Oyola, 99 So. 3d at 442. We held that

sufficient evidence existed to support the conviction for first-degree murder,

affirmed the assignment of great weight to the HAC aggravating circumstance, and

concluded that the trial court did not abuse its discretion when it gave slight weight

to Oyola's mental health status as a nonstatutory mitigating circumstance. Id. at

444-49. We also rejected the Ring claim. Id. at 449. However, we reversed and

remanded to the trial court for a new sentencing order that complied with the

procedures prescribed by Campbell.[6] Id. at 447.

## The Resentencing

This Court issued its opinion on September 20, 2012. Id. at 431. On

October 30, 2012, the trial court issued a Revised Sentencing Order that again

---

6. Campbell requires a trial court to (1) clearly consider every proposed mitigating circumstance; (2) determine whether sufficient evidence supports a finding of that circumstance; (3) decide whether that circumstance, if nonstatutory, is truly mitigating; (4) assign weight to each established aggravating and mitigating circumstance; and (5) detail this analysis in the sentencing order. 571 So. 2d at 419-420. When a sentencing order is remanded for a Campbell error, the trial court must conduct a new Spencer hearing, at which both parties must have the opportunity to submit argument and sentencing memoranda; however, a defendant is not entitled to produce new evidence. Jackson v. State, 767 So. 2d 1156, 1160 (Fla. 2000) (citing Spencer v. State, 615 So. 2d 688, 691 (Fla. 1993)). After the new Spencer hearing, the trial court must write a new sentencing order and hold a second hearing to announce the sentence before both parties. Id. at 1160-61.

sentenced Oyola to death, but the trial court had not conducted a new Spencer[7] hearing or a new sentencing hearing. After Oyola filed a Motion for Reconsideration that asserted that he was entitled to a new Spencer hearing,[8] the court held both a Spencer hearing and a new sentencing hearing, at which both parties were present.

The trial court issued a Second Revised Sentencing Order on April 29, 2013, that again sentenced Oyola to death.[9] The trial court found the same three aggravating circumstances: Oyola was on probation for a felony (great weight); the murder was committed during a robbery, merged with pecuniary gain (great weight); and HAC (great weight). In the analysis of the aggravating factor that the murder was committed during the course of a robbery, the trial court expressed concern that Oyola was already sentenced to life imprisonment for the armed robbery, which was previously affirmed by this Court:

> A life sentence is a possible sentence for either an armed robbery or first degree murder. If there is to be any additional consequence for actually murdering the person who is the victim of an armed robbery, the death penalty should be imposed. . . . If there is to be any consequence for taking Gerrard's life, after [Oyola] robbed him, or during the robbery, while armed, the death penalty should be imposed.

7. Spencer, 615 So. 2d 688.

8. See Jackson, 767 So. 2d at 1160-61 (detailing the procedures for a Campbell remand).

9. The Second Revised Sentencing Order from April 2013 substantially mirrors the Revised Sentencing Order from October 2012.

The trial court again found no statutory mitigating factors. The court also found that the sole nonstatutory mitigating circumstance of general mental condition merited only slight weight. In the conclusion of the analysis of aggravating and mitigating circumstances, the court wrote that the aggravating circumstances outweighed the mitigating circumstances:

> This court does sentence the defendant to life imprisonment for the armed robbery. The premeditated murder of the victim of the robbery should result in some additional consequence. The imposition of a life sentence for the murder, overriding the jury's recommendation for the death penalty, would result in no additional consequence for the murder. The imposition of only a life sentence for the first degree murder committed by Oyola would be a reward to him for his elaborate scheme to use a mental health expert to thwart justice. A life sentence for the first degree murder by Oyola would be contrary to this court's finding that the mitigating circumstances did not outweigh the aggravating circumstances.

After the trial court issued its Second Revised Sentencing Order, the presiding judge passed away. This appeal followed.

## ANALYSIS

Oyola contends that he is entitled to a new penalty phase because the Second Revised Sentencing Order does not comport with Florida's capital sentencing statutory scheme. He asserts that the order reflects inappropriate considerations by the trial judge. He also contends that the sentencing order improperly denigrated his mental health mitigation evidence and that the order, like the initial sentencing order, violates Campbell. Additionally, he seeks reconsideration of his Ring claim.

- 8 -

We agree with Oyola that the Second Revised Sentencing Order reflects a misdirected analysis by the trial judge and denigrates mitigation evidence. We therefore reverse and remand this case for a new penalty phase proceeding.[10]

Improper Consideration of Nonstatutory Aggravating Factors

Section 921.141, Florida Statutes, governs capital sentencing procedures. After the jury issues an advisory sentence, the judge must independently weigh the aggravating and mitigating circumstances before a sentence is ordered. § 921.141(3), Fla. Stat. (2007). The capital sentencing statute expressly constrains the aggravating circumstances a trial judge may consider to fifteen enumerated factors. § 921.141(5), Fla. Stat. It also provides seven specific factors for a court to consider as possible mitigating circumstances, along with an eighth "catch-all" provision that expands the realm of mitigating circumstances to "any other factors in the defendant's background that would mitigate against imposition of the death penalty."[11] § 921.141(6), Fla. Stat. Thus, while the statute governs both

_____

10. Because we remand for a new penalty phase, we do not address Oyola's Campbell claim. As for the Ring claim, this Court has clearly and repeatedly rejected the contention that Ring requires a unanimous jury to find the existence of each proposed aggravating circumstance. See Oyola, 99 So. 3d at 449 (citing Frances v. State, 970 So. 2d 806, 822-23 (Fla. 2007); Hernandez-Alberto v. State, 889 So. 2d 721, 733 (Fla. 2004)).

11. Although the aggravating factors that may be considered are limited by statute, the weight assigned to established factors falls within the discretion of the

- 9 -

aggravating and mitigating factors, the statutory scheme allows a court to consider nonstatutory mitigating factors, but limits consideration of aggravating factors to only those listed in section 921.141(5), Florida Statutes.

A common challenge to an aggravating factor found by the trial court is that it is not supported by the record or should have been merged with some other similar factor. See, e.g., Tanzi v. State, 964 So. 2d 106, 117-18 (Fla. 2007); Crump v. State, 622 So. 2d 963, 972 (Fla. 1993). When we conclude that an aggravating factor is not supported by the evidence, we review the erroneous finding for harmless error. See, e.g., Tanzi, 964 So. 2d at 117-18; Burns v. State, 609 So. 2d 600, 606-07 (Fla. 1992) (citing Rogers v. State, 511 So. 2d 526, 535 (Fla. 1987)). However, in the rare instance in which a sentencing order includes an invalid nonstatutory aggravating circumstance, this Court has held that the error cannot be harmless[12] and has remanded for resentencing if there is any evidence that mitigates against the imposition of the death penalty. See Riley v. State, 366 So. 2d 19, 22 (Fla. 1978) (citing Elledge v. State, 346 So. 2d 998, 1002-03 (Fla. 1977)).

---

trial court. See § 921.141(5), Fla. Stat.; Globe v. State, 877 So. 2d 663, 674 (Fla. 2004).

12. During oral argument, the State conceded that a harmless error analysis was inapplicable under these circumstances.

Improper language in a sentencing order does not always or automatically amount to reliance on a nonstatutory aggravating factor. We have affirmed sentencing orders when the inappropriate language is confined to a stray remark that does not reflect an underlying improper sentencing rationale. See Singleton v. State, 783 So. 2d 970, 979 (Fla. 2001) (affirming a death sentence, despite improper biblical language in the conclusion, because the sentencing order expressly stated that the court only considered two statutory aggravating factors); see also Brown v. State, 473 So. 2d 1260, 1265 (Fla. 1985) (trial judge's oral comment that defendant had "led a parasitic existence" did not indicate that the judge improperly considered a nonstatutory aggravating factor in the sentencing process).

However, nonstatutory aggravating circumstances are not permitted in the sentencing evaluation process. This Court has consistently found harmful error when the State introduces evidence that constitutes inadmissible nonstatutory aggravation. See Poole v. State, 997 So. 2d 382, 392 (Fla. 2008) (citing Perry v. State, 801 So. 2d 78, 89 (Fla. 2001); Kormondy v. State, 703 So. 2d 454, 463 (Fla. 1997); Geralds v. State, 601 So. 2d 1157, 1162-63 (Fla. 1992); Maggard v. State, 399 So. 2d 973, 977 (Fla. 1981)). Cf. Scull v. State, 533 So. 2d 1137, 1143 n.* (Fla. 1988) (finding no sentencing error when the trial judge was aware of, but did not consider, inadmissible victim impact evidence). Such comments, when heard

by the jury, are not harmless because they create a serious risk that the inadmissible statements affected the advisory sentence. See, e.g., Poole, 997 So. 2d at 392.

Similarly, the reliance on improper nonstatutory aggravating circumstances by a judge when he or she conducts the required independent analysis of aggravating and mitigating circumstances is harmful. Just as a jury should not be exposed to evidence of impermissible aggravating factors, a judge should not be permitted to consider them as part of the evaluation process. It is clear that capital sentencing must proceed in accordance with section 921.141, Florida Statutes.

> As we have repeatedly stressed, a trial judge's weighing of statutory aggravating factors and statutory and nonstatutory mitigating circumstances is the essential ingredient in the constitutionality of our death penalty statute. [Grossman v. State, 525 So. 2d 833, 839 (Fla. 1988)]. It is for this very reason that we have found it essential for trial judges to adequately set forth their weighing analyses in detailed written orders. Walker v. State, 707 So. 2d 300, 318-19 (Fla. 1997); Campbell v. State, 571 So. 2d 415, 419 (Fla. 1990).

Porter v. State, 723 So. 2d 191, 196 (Fla. 1998). Indeed, the purpose of the statutory scheme in which a jury provides an advisory sentence contemplates that the judge, with his or her familiarity with the law and its practice, will bring a perspective to the capital sentencing process that lay jurors lack. See Cooper v. State, 336 So. 2d 1133, 1140 (Fla. 1976).

The language used in this case is far more than a conclusory, insignificant remark; instead, it demonstrates that the analysis of the trial court was rooted in the

consideration of an improper nonstatutory aggravating factor.  Troubling language permeates the sentencing order.  In the section that explains the weight assigned to each aggravating factor, the trial court twice states that "the death penalty should be imposed" if "there is to be any [additional] consequence" for the murder, beyond the life imprisonment imposed for the armed robbery.  In the conclusion, the trial court again emphasizes that a sentence of life imprisonment would be insufficient:

> This court does sentence the defendant to life imprisonment for the armed robbery.  The premeditated murder of the victim of the robbery should result in <u>some additional consequence</u>.  The imposition of a life sentence for the murder, overriding the jury's recommendation for the death penalty, <u>would result in no additional consequence for the murder</u>.  The imposition of <u>only a life sentence</u> for the first-degree murder committed by Oyola would be a <u>reward to him</u> for his elaborate scheme to use a mental health expert to thwart justice.

(Emphasis supplied.)  This concern pervades the sentencing order and is not confined to a stray comment in the conclusion.  The language used here could be interpreted as calling for a death sentence in every case that also involves a robbery.

The language in this case exceeds that found in either <u>Singleton</u> or <u>Brown</u>. The comments rest on the mistaken principle that in cases that involve not only a murder, but an additional crime that carries a life sentence, the defendant must be "adequately" punished for each individual crime.  Such logic would automatically impose the death penalty any time a defendant was convicted of a felony and

- 13 -

subject to life imprisonment for the underlying felony.  This analytical process is inconsistent with Florida's death penalty statute and our jurisprudence.  See Brooks v. State, 762 So. 2d 879, 903 (Fla. 2000) (citing Provence v. State, 337 So. 2d 783, 786 (Fla. 1976)); see also Consalvo v. State, 697 So. 2d 805, 820 (Fla. 1996) ("[O]ne who commits a capital crime in the course of a burglary will not automatically begin with two aggravating circumstances.").

Moreover, we are not convinced by the position of the State that this revised sentencing order can be affirmed under Globe v. State, 877 So. 2d 663 (Fla. 2004). The defendant in Globe was incarcerated pursuant to a life sentence when he murdered his cellmate.  Id. at 666.  After the trial court found as an aggravating circumstance that Globe had been previously convicted of a prior violent felony, it wrote that "[w]ithout the death penalty, there is no deterrence.  Without the death penalty, there is no punishment.  This aggravating circumstance is accorded great weight."  Id. at 675.  We rejected Globe's claim that this statement reflected reliance on a nonstatutory aggravating circumstance and held that the trial court did not include additional nonstatutory aggravating factors, but simply explained the weight assigned to the found factor.  Id. at 676 (citing Kilgore v. State, 688 So. 2d 895 (Fla. 1996)).

Similarly, the defendant in Kilgore claimed that language in the sentencing order demonstrated that he had been denied an individualized sentence.  688 So. 2d

at 899. He had previously been sentenced to two consecutive life sentences for first-degree murder and kidnapping when he murdered his lover in prison. Id. at 896. The trial court in its sentencing order wrote the following:

> Under certain circumstances the state not only has the right, but the obligation, to take the life of convicted murderers in order to prevent them from murdering again. This is one of those cases. To sentence Mr. Kilgore to anything but death would be tantamount to giving him a license to kill.

Id. at 899. We determined that, within the context of the facts of that case, the judge independently evaluated the appropriate aggravating and mitigating factors and provided Kilgore an individualized sentence. Id. at 900. Therefore, we concluded that the trial court did not rely on any nonstatutory aggravating circumstances and affirmed the sentence. Id.

The facts of Globe and Kilgore distinguish those cases from this case. Both Globe and Kilgore involved defendants who had been sentenced to life imprisonment for prior crimes when they committed capital murder. The trial courts in Globe and Kilgore gave great weight to the aggravating circumstance that both defendants had been convicted of prior violent felonies, an aggravating circumstance not found here. Globe, 877 So. 2d at 668 n.3; Kilgore, 688 So. 2d at 897 & n.2.[13] Those courts did not rely on a nonstatutory aggravating factor, but

_____

13. The trial courts in Globe and Kilgore found as aggravating factors both sections 921.141(5)(a), Florida Statutes, that the capital felony was committed by a prior felon and imprisoned, placed on community control, or on felony probation,

- 15 -

used strong language only to describe the weight assigned to this factor. By contrast, Oyola was not in custody at the time he murdered Gerrard,[14] and the life sentence was imposed for a robbery committed in connection with that murder.[15] Were we to affirm the Second Revised Sentencing Order under Globe or Kilgore, we would approve an analysis that would impose the death penalty any time a defendant is also sentenced to life imprisonment under circumstances such as these to ensure "adequate" punishment. This is a position we have long been unwilling to support. See Brooks, 762 So. 2d at 903; Provence, 337 So. 2d at 786.

Moreover, the problematic language in this sentencing order is far more pervasive than the language challenged in either Globe or Kilgore. Given that the statement "[i]f there is to be any additional consequence" for the murder, then "the death penalty should be imposed," is repeated nearly verbatim in the analysis and then echoed in the conclusion of the sentencing order, we have more than mere colorful language by the trial court. These statements, when read together, reflect

and 921.141(5)(b), the capital felony was committed by a person convicted of a prior violent felony. See Globe, 877 So. 2d at 668 n.3; Kilgore, 688 So. 2d at 897 nn.1-2. This trial court did not find section 921.141(5)(b), Florida Statutes, as an aggravating circumstance.

14. Oyola was on probation for theft crimes when he murdered Gerrard. Oyola, 99 So. 3d at 439 n.1.

15. This Court previously found sufficient evidence supported the murder conviction on the theories of both first-degree premeditated and felony murder. Oyola, 99 So. 2d at 448.

the mindset of a judge who was concerned with aggravating circumstances beyond those allowed by statute. Unlike other cases that involve a stray inarticulate remark, or a comment that explains the weight ascribed to a statutory aggravating factor, we cannot be satisfied that a different sentence would not have been imposed but for the invalid aggravating consideration here because there was some mitigating evidence in this case. See Burns, 609 So. 2d at 607; Elledge, 346 So. 2d at 1003; cf. Riley v. Wainwright, 517 So. 2d 656, 659-60 (Fla. 1987) (concluding that under Lockett v. Ohio, 438 U.S. 586 (1978), the defendant was entitled to a new penalty phase because neither the jury nor the judge considered relevant nonstatutory mitigating evidence). Therefore, we hold that this error is not harmless.

### Improper Denigration

We also conclude that the trial court improperly denigrated mental health mitigation offered by Oyola and impugned defense counsel in the statement that a life sentence "would be a reward" for Oyola's "elaborate scheme to use a mental health expert to thwart justice." Although the statement here occurred in the sentencing order, the extensive case law with respect to inappropriate statements by prosecutors provides a useful comparison. We have made it clear that a prosecutor may neither denigrate mitigating evidence nor undermine the credibility of defense counsel. Prosecutors who claim in closing statements that defendants'

mitigating evidence are "excuses," "make-believe," "flimsy," or "phantom" have been rebuked by this Court.  See Delhall v. State, 95 So. 3d 134, 167-68 (Fla. 2012); Franqui v. State, 59 So. 3d 82, 98 (Fla. 2011); Brooks, 762 So. 2d at 904; see also Urbin v. State, 714 So. 2d 411, 421 (Fla. 1998) (noting that the prosecutor improperly called a defense witness the "mistress of excuses").  Likewise, this Court has shown little patience for comments that impugn the integrity of defense counsel.  See, e.g., Braddy v. State, 111 So. 3d 810, 853-54 (Fla. 2012) ("Verbal attacks . . . on the manner in which counsel conducted the defense are improper . . . ."), cert. denied, 134 S. Ct. 275 (2013); Franqui, 59 So. 3d at 98 (citing Brooks, 762 So. 2d at 904-05 (finding an abuse of discretion by the trial court in overruling an objection to a personal attack on counsel)).  Whether by a prosecutor or by a trial court, such remarks are improper.

Denigrating comments by a prosecutor or a judge are reviewed for harmless error.  See, e.g., Singleton, 783 So. 2d at 979 (concluding that an improper biblical reference in the sentencing order was harmless because the jury did not hear it).  Where we find multiple errors, we also review the errors cumulatively to determine whether the defendant has been deprived of a fair trial or penalty phase.  See, e.g., Poole, 997 So. 2d at 394.  We have reversed sentences where we have found that inappropriate—but not fundamentally erroneous—comments, together with

inadmissible nonstatutory aggravating evidence, cumulatively deprived a defendant of his right to a fair penalty phase.  See id.

This statement inappropriately denigrates the mental health mitigation presented by Oyola as an "excuse."  The statement also impugns Oyola's defense because it implies that counsel concocted a "scheme" to present mental health as a nonstatutory mitigating factor.[16]  Even if there is evidence in the record to suggest that Oyola himself wished to raise mental health in his defense, this comment remains problematic, especially given the reliance on the inappropriate aggravating consideration.  A sentence of death or life imprisonment is neither a punishment nor a reward for trial strategy.  Individually, this statement, albeit improper, is harmless;[17] however, when viewed cumulatively with the error of nonstatutory aggravation, this order must be reversed.  See id.

## CONCLUSION

---

16.  Such a comment also contradicts the court's earlier praise of the performance by defense counsel: "The defendant was represented at trial by two of the best and most experienced criminal defense lawyers in this circuit. . . .  They each conducted themselves in an exemplary fashion during trial and did nothing to distract from the jury's fair consideration of all evidence."

17.  See Singleton, 783 So. 2d at 979; Hitchcock, 755 So. 2d at 643. However, we note that such denigrating comments from judges—who are supposed to be neutral—are more troublesome than those from a prosecutor who is charged with zealous advocacy, even if a jury does not hear them.

We reverse and remand the Second Revised Sentencing Order, which impermissibly relied on a nonstatutory aggravating factor and contained cumulative errors. Because the judge in this case has since passed away, we reverse and remand this case for a new penalty phase. See Fla. R. Crim. P. 3.700(c)(2) ("In any capital case in which it is necessary that sentence be pronounced by a judge other than the judge who presided at the capital trial, the sentencing judge shall conduct a new sentencing proceeding before a jury prior to passing sentence."). As such, we do not comment on the aggravating or mitigating circumstances found in the Second Revised Sentencing Order, nor do we address the additional claims raised by Oyola. We do note that this is the second time we have reversed and remanded a sentencing order regarding Mr. Oyola for procedural deficiencies. We urge trial judges to be circumspect when they prepare an order that sentences a defendant to death and to conform to the procedures dictated by statute and our jurisprudence.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I would affirm. Although the trial court's order used extraneous language in a couple of instances regarding Oyola's life sentence for robbery, it does not warrant reversal because it does not indicate that the trial court relied upon non-statutory aggravation. Instead, based on the entirety of the fifteen-page sentencing order, it is clear that the trial court only imposed a death sentence after properly considering and weighing statutory aggravators and proposed mitigation and concluding that the three statutory aggravators outweighed the mitigation.

The language at issue in this case is most similar to the language involved in Globe v. State, 877 So. 2d 663 (Fla. 2004), a case this Court affirmed on appeal. Specifically, in Globe, 877 So. 2d at 675, the sentencing order contained the colorful statements that "[w]ithout the death penalty, there is no deterrence. Without the death penalty, there is no punishment." But unlike the majority in this case, this Court in Globe rejected the claim that these statements evidenced that the trial court had considered improper non-statutory aggravators. Id. at 676. This Court in Globe, 877 So. 2d at 676, concluded that the trial court "was not detailing additional aggravators but was merely evaluating the facts of this case and providing support for the amount of weight given to the statutory aggravating factor." See also Kilgore v. State, 688 So. 2d 895, 897 (Fla. 1996) (affirming even though the sentencing order included the language that "[t]o sentence Mr. Kilgore to anything but death would be tantamount to giving him a license to kill");

Singleton v. State, 783 So. 2d 970, 979 (Fla. 2001) (holding that trial court considered only the stated statutory aggravators even though the sentencing order included the extraneous statements that the crime was "an unprovoked senseless killing of the mother of two children without cause, provocation, or justification" and an indication "that we are living in times worse than Sodom and Gomorrah"); Brown v. State, 473 So. 2d 1260, 1265 (Fla. 1985) (concluding that trial judge's oral comment that defendant "led a parasitic existence" was "not necessarily a finding of a non-statutory aggravating circumstance").

Accordingly, because our precedent does not require reversal when extraneous language is used and because the sentencing order as a whole reveals that the trial court relied only upon statutory aggravators, I respectfully dissent.

An Appeal from the Circuit Court in and for Jefferson County,
      Louie Ralph Smith, Jr., Judge - Case No. 332008CF000128CFAXMX

Nancy Ann Daniels, Public Defender, and William Carl McLain, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

      for Appellant

Pamela Jo Bondi, Attorney General, and Patrick M. Delaney, Assistant Attorney General, Tallahassee, Florida,

      for Appellee